**A. W. LAFFERTY and Richard L. Merrick, Appellants,**

v.

**George M. HUMPHREY, Secretary of the Treasury, et al., and Benton County, Corvallis, Oregon, et al., Appellees.**

No. 13353.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 18, 1957.

Decided June 13, 1957.
Writ of Certiorari Denied Nov. 12, 1957.
See 78 S.Ct. 118.

Messrs. A. W. Lafferty, Portland, Or., Byron N. Scott, Washington, D. C., and Donald C. Walker, Portland, Or., of the bar of the Supreme Court of Oregon, pro hac vice, by special leave of Court, for appellants.

Mr. Paul R. Connolly, for appellee Benton County, Corvallis, Oregon, and certain other appellees. Mr. Harold S. Harrison, Attorney, Department of Justice, with whom Mr. Roger P. Marquis, Attorney, Department of Justice, was on the brief, for appellee George M. Humphrey, Secretary of the Treasury, and certain other appellees.

Before EDGERTON, Chief Judge, and PRETTYMAN and WILBUR K. MILLER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a suit for a class-action attorney fee. It is another step in a long controversy which began in acts of Congress in 1860–1870. The facts are recited in some detail in our opinion in Clackamas County, Or., v. McKay.[1] They need not be repeated here.

In our opinion and decision in that case we held that acts of Congress in 1916[2] and 1937[3] imposed upon the various executive officials involved a mandatory duty to distribute to the Oregon counties the money accumulated in the special fund designated "The Oregon and California land-grant fund". We ordered a remand for proceedings in accordance with that view. That was on April 30, 1954.

A petition for rehearing was filed, and on June 24, 1954, while the petition was pending, Congress passed an act which, *inter alia*, directed that the funds theretofore derived from the lands and placed in the special fund "shall be disposed of

1. 94 U.S.App.D.C. 108, 219 F.2d 479 (1954).

2. 39 Stat. 218.
3. 50 Stat. 874, 43 U.S.C.A. § 1181a et seq.

in accordance with the provisions of title II of the Act approved August 28, 1937 (50 Stat. 874) as hereby amended".[4]

In the presentation to the Congress of the bill which became the act, it was made abundantly clear that the decision of this court had settled the question of the status of the disputed lands but that the court did not attempt to decide the question of jurisdiction for management purposes as between the Department of the Interior and the Department of Agriculture. The distribution of the funds depended upon the former question; if the lands were "O & C" lands the funds belonged in part to the counties, no matter what Department had management of them. The act did not purport to change the court's decision. It effected exactly what the court ordered, distribution of the funds pursuant to the 1937 act, and it decided the dispute as to management, a matter concerning which the court had said nothing.

The legislative history of the 1954 act clearly shows the intention behind it. Senator Cordon, who sponsored the bill, told the Senate:

"Mr. President, the purpose of the bill is to determine legislatively a jurisdictional question which has existed between the Department of Agriculture and the Department of the Interior for many, many years. * * *

*     *     *     *     *     *

"The question of the character and class of the lands reached the courts in 1925, in a suit brought by the Government against the railroad company for an accounting in connection with the revestment and the reciprocal obligation of the Government and the company. In that case the determination of the Court was that the 472,000 acres were revested O. & C. grant lands.

"However, the Court did not attempt to make any determination with respect to the administration of the 472,000 acres in question. That issue was not properly before the Court. There is a series of decisions with respect to the legal status of the lands. The latest decision was rendered only a couple of weeks ago— on April 30, 1954—in the United States Circuit Court of Appeals for the District of Columbia. All decisions have been uniform with respect to the law and its applicability to these lands.

"However, there has remained the question of jurisdiction for management purposes. * * *

*     *     *     *     *     *

"Because of the fact that there is a distribution of funds from the O. & C. Railroad lands to local governmental units much greater than the distribution to local units in the case of Forest Service lands, the question of the legal character of the 472,000 acres is of great importance to the people of Oregon. *The courts have determined that question.* * *

"This bill meets the overall situation by providing that the 472,000 controverted acres are declared to be revested O. & C. lands. This is precisely what the Court declared them to be.

*     *     *     *     *     *

"Thus, the bill, S. 2225, takes care of both the administrative question and the jurisdictional one as far as the 472,000 acres are concerned."[5] (Emphasis supplied.)

When the bill reached the floor of the House the following colloquy occurred:

"Mr. Wickersham. Mr. Speaker, reserving the right to object, and I make this reservation at the request of two of our former colleagues, I would like to ask the gentleman from Oregon [Mr. Ellsworth] a question. This measure is a followup and confirms a decision of the District of Columbia Circuit of the United States Court of Appeals on April 30, 1954, in which action A. W. Lafferty, a former Member of Congress, represented Clackamos [*sic*] County, Oreg., and others and won the decision. Is this correct?

4.  68 Stat. 270, 43 U.S.C.A. § 1181g.

5.  100 Cong.Rec. 6886 (1954).

"Mr. Ellsworth. That is correct.

\* \* \* \* \* \*

"Mr. Wickersham. Is it a fact that this bill confirms the decision of the court of appeals which directed the payment of $7 million or $8 million to 18 Oregon counties, including Clackamos [*sic*] County, all of which 18 counties thereby benefiting by the action instituted by A. W. Lafferty, as attorney, and benefited from the said court decision? This is correct, is it not?

"Mr. Ellsworth. That is correct." [6]

On October 21, 1954, the petition for rehearing was denied in this court, and our mandate issued. We noted that as of that time no statement had been made that the Secretaries had distributed the funds.

On February 17, 1955, the Government applied to the Supreme Court for a writ of certiorari, saying that the Secretary of Agriculture had by that time, pursuant to the new act, transferred the funds to the Secretary of the Interior and he in turn had distributed to the counties the parts of the accumulated funds due them, retaining a substantial sum on account of the present proceeding. The Government officials now stand neutral in the matter.

On April 18, 1955, the Supreme Court granted certiorari, vacated our judgment, and remanded the case with directions to dismiss as moot.[7]

Our present appellants, Lafferty and Merrick, are the lawyers who conducted the lawsuit above discussed. They filed an action for attorney fees, naming the Secretaries defendants, as stakeholders of the fund, and the Oregon counties as the debtor defendants. The defendant counties, with the exception of Clackamas County, moved for summary judgment on two grounds: (1) that these lawyers' efforts to bring about a distribution of the funds had been unsuccessful and (2) that the lawyers had not been re-

tained by movants. The District Court granted the motion.

Two questions are before us. The first is whether the lawsuit conducted by these appellant lawyers resulted in benefit to the counties. To say that it did not result in such a benefit seems to us little more than a play on words. Many efforts had been made prior to 1954 to persuade Congress to settle the controversy specifically and to direct the payment of the funds to the counties. None had succeeded. As the Congressional Record shows, when the bill came before Congress in 1954 the members were told specifically and emphatically that this court had settled the legal character of the lands, and in the House they were told that the bill "confirms" the decision of this court. The act finally adopted directed payment pursuant to the 1937 statute, which is what this court had ordered.

If we thought Congress intended to divest a court decree of effectiveness after it had been validly rendered by a court of competent jurisdiction, we would have a serious question as to the validity of the congressional act. But clearly Congress had no such intention. Quite the contrary, it accepted the court decision as settling the controversy as to the nature of the lands and went on from there to prescribe the future management.

To say that the action was unsuccessful because pending certiorari the Government paid over the money which was the sole subject of the litigation, seems to us to be another play on words. A party does not nullify a court order by complying with it.

Thus we are of clear opinion that the lawyers who conducted the litigation performed services which were of value and achieved substantial benefits for the counties.

Upon the second point, that only Clackamas County engaged these lawyers, Sprague v. Ticonic Nat. Bank [8] is dispositive. In the case at bar there was a definite, earmarked fund. The litigation resulted in a substantial benefit to all the

6. 100 Cong.Rec. 7969 (1954).
7. 349 U.S. 909, 75 S.Ct. 599, 99 L.Ed. 1244.
8. 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

counties. They all participated in the distribution. The complaint was brought by Clackamas County on behalf of itself and the other counties.

It was said by the Government in its petition for certiorari in the Supreme Court in 1955 that the amendment of the 1937 act contained in the 1954 act resulted in "different payments to the counties under the 1954 Act than under the provisions of the 1937 Act." The amendment may have resulted in different payments to the *respective* counties, but it in no way affected, even by a penny, the total amount payable to all the counties. The lawsuit was to determine whether the whole sum was payable to all the counties. What portion each county would get was not involved. The service rendered by these attorneys was in respect to the whole fund as payable to all of the counties. The formula for distribution among the several counties had nothing to do with their services.

The judgment of the District Court will be reversed and the case remanded for the determination of the proper amounts of fees to be paid these appellant lawyers from the fund retained in the hands of the Government.

Reversed and remanded.