Hernian L. R. EMMET, Jr., on behalf of himself and all others similarly situated, Plaintiff,

v.

Sumner G. WHITTIER, Administrator of Veterans Affairs, et al., Defendants,

Willard Van Valkenburgh et al., Plaintiff-Intervenors.

Robert H. MABBUTT and Robert R. Johnson, suing for themselves and all persons similarly situated, Plaintiffs,

v.

UNITED STATES of America, Defendant.

James A. DEERING, on behalf of himself and all others similarly situated, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 5658-55, 1032-58, 1018-58.

United States District Court
District of Columbia,
Civil Division.
Aug. 15, 1958.

John Geyer Tausig, Washington, D. C., for plaintiffs.

Robert J. Asman, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

The present motion asks the Court to enjoin the complete payment of funds to veterans under the Act of Congress Public Law No. 85-586 enacted August 1, 1958, 50 U.S.C.A.Appendix, § 540 note. The circumstances giving rise to the present motion are as follows:

Article IV of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A. Appendix, § 540 et seq., provided a plan under which men inducted into the armed forces would continue to receive the protection of previously purchased commercial life insurance while in serv-

ice without paying premiums. Insurance companies were required to keep the policies of servicemen who elected to come under the Act in effect until one year after their military service ended, even though these men made no further payments. The Government assured the insurance companies that the premiums would eventually be paid by giving its promissory certificates to the companies. Veterans, once separated from service, could elect to pay the back premiums, with interest, and keep their policies in force, or allow them to lapse. Over eight thousand veterans chose the latter course and the Government was forced to indemnify the insurance companies for the unpaid premiums due during the veteran's time in service.

The Government then took the position that it was entitled to be reimbursed from the individual veterans for the money it was forced to pay by reason of the veteran's action. It deducted from other benefits due the veteran the amount of premium paid on the veteran's behalf.

On behalf of a few veterans an action was started in the Northern District of California and the Southern District of New York to determine the Government's right to reimbursement. A stipulation was entered in the New York action agreeing that it would be governed by the decision of the Supreme Court in United States v. Plesha, 1957, 352 U.S. 202, 77 S.Ct. 275, 1 L.Ed.2d 254, the California case.

The Supreme Court held that the Government was not entitled to be reimbursed. Some eight thousand veterans from whom the Government had already deducted veterans benefits were affected by this decision and entitled to refunds. Since the statute of limitations was about to run, the attorneys in the Plesha case attempted to get a stipulation from the Government that it would be governed by Plesha with respect to claimed refunds of other veterans. This the Government refused.

As a result, there were filed three class actions, now consolidated before this Court, on behalf of individual veterans and others so situated. All attorneys who have participated in any of the above cases are also before the Court. In these actions the complaint asked for the amount deducted, 3% interest on dividends left on deposit in the National Service Life Insurance trust fund, and attorneys' fees.

In 1958, at the behest of the Government, Congress passed the Act mentioned above, authorizing the payment of the previously deducted premium payments, without interest, to veterans in the situation of Plesha. This rendered moot one of the issues in the class action still pending and left remaining only the questions of interest and attorneys' fees.

The injunction prayed for is only with respect to attorneys' fees.

Counsel for plaintiffs allege that should the Veterans Administration pay to all veterans the money appropriated in the statute, and a court later deem it fitting to award them attorneys' fees, the fund will have been dissipated and recovery of their fees will be impossible. Thus, they allege, there will be irreparable injury.

It appears clear to the Court that this is indeed the situation. Any fee to be awarded by a court will be drawn from the fund gained by virtue of the attorneys' efforts. Washington Gas Light Co. v. Baker, 1951, 90 U.S.App. D.C. 98, 195 F.2d 29, 33. No action against the United States or other remedy would be available to the attorneys should this fund be dissipated beforehand.

But even if this be the case, it is necessary that there be "enough to substantiate plaintiff's claims so as to move the court in the exercise of a sound discretion to intervene by its process," pending outcome of the main action. Pang-Tsu Mow v. Republic of China, 1952, 91 U.S.App.D.C. 324, 328, 201 F.2d 195, 199, certiorari denied 1953, 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356. The Court has, therefore, examined with some scrutiny the merits of this aspect of the case.

The leading case on this question is Sprague v. Ticonic Nat. Bank, 1938, 307 U.S. 161, 59 S.Ct. 777, 780, 83 L.Ed. 1184. Petitioner in that case had established, by means of a lawsuit, her claim to a lien on the proceeds of certain bonds to the amount of the trust funds she had deposited with the bankrupt Ticonic Bank. Her attorneys argued that her case had, by the operation of *stare decisis*, established the claims of fourteen other trust claimants in similar positions and; therefore, the measurement of attorneys' fees should be on the basis of the sum total of the fifteen trusts, all of which had benefited and should bear the cost of the initial suit. The Supreme Court held that the District Court had the power to award the attorneys' fees requested. The Court said, "Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through *stare decisis* rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation."

The above language was quoted and followed in Washington Gas Light Co. v. Baker, supra, where the plaintiff had brought an action protesting certain rate increases. Plaintiff was successful in having the rate increase set aside. Although the award to the individual plaintiff was very small, the total amount of the refund was very substantial. The Court, following the Sprague case, permitted allotment of attorneys' fees on the basis of the entire fund acquired and not only on the sum gained by the successful plaintiff. The Supreme Court of the United States has stated the reason for the rule and its salutary character. " 'Such a rule of practice,' * * * 'is absolutely essential to the safety and security of a large number of persons who are entitled to the protection of the law—indeed, stand most in need of it— but who are incompetent to know when they are wronged, or to ask for protection or redress.' " United States v. Equitable Trust Co., 1931, 283 U.S. 738, 744, 51 S.Ct. 639, 641, 75 L.Ed. 1379.

■ The Court is aware that the situation in the case at bar is somewhat different from that presented in the cases cited above. Here there is the intervention of an Act of Congress granting the repayment to the veterans. This statute was, however, instigated in some degree by the actions of the plaintiffs in the cases here.

Further, there is the issue as to whether there is any clearly defined fund which may be traced to these lawsuits from which attorneys' fees can be granted. These questions the Court need not decide and upon them the Court expresses no opinion. It is enough to decide, as the Court does, that there is a substantial question on the merits of the case with respect to the awarding of attorneys' fees.

■ The exercise of the court's equity jurisdiction "is a matter of sound judicial discretion, in the exercise of which the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." Yakus v. United States, 1944, 321 U.S. 414, 440, 64 S.Ct. 660, 675, 88 L.Ed. 834. The Court notes that the instant case is on the ready calendar and is set for trial early this fall. Balancing the equities of the case, and taking into consideration the precept that the judiciary should exercise great caution before restraining governmental action, the Court is of the opinion that the temporary injunction should be granted.

The motion is granted enjoining the Veterans Administration from disbursing more than 90% of the payments authorized by Public Law 85–586. This injunction is to be in effect until the final determination of this suit, or until a further order of the court.

This memorandum may be considered specific findings of fact and conclusions of law.

Counsel will present the appropriate order.