**NATIONAL COUNCIL OF COMMUNITY MENTAL HEALTH CENTERS, INC., et al., Plaintiffs,**

**v.**

**Caspar WEINBERGER et al., Defendants.**

**Civ. A. No. 1223–73.**

United States District Court, District of Columbia.

Dec. 20, 1974.

Jerome S. Wagshal, pro se.

Guy W. Shoup, Eliot S. Gerber, New York City, Patrick J. Moran, Washington, D.C. for NCCMHC.

Bruce Titus, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

One hundred thirty-eight community mental health centers, certified by the Court as a class under Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure, prevailed in this action to set aside an impoundment order. As a re-

sult, the Secretary of Health, Education and Welfare released previously withheld appropriations amounting to $52 million which Congress had previously authorized for fiscal 1973. National Council of Community Mental Health Centers, Inc. v. Weinberger, 361 F.Supp. 897 (D.D.C.1973). Shortly after the appeal from that order was abandoned, various related petitions were filed asking the Court to order that Jerome A. Wagshal, Esquire, attorney for the named representatives of the class, be compensated by H.E.W. or the class for his services. Voluminous papers, including affidavits, were filed, testimony was taken and notice given by mail to all members of the class.

■ The original complaint and applications by both the class and Mr. Wagshal ask attorney's fees on behalf of the class from the Government defendants. The law is settled that, in the absence of specific statutes to the contrary, attorney's fees may not be awarded against the Government. 28 U.S.C. § 2412; United States v. Chemical Foundation, 272 U.S. 1, 20, 47 S.Ct. 1, 71 L. Ed. 131 (1926); United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887 (1930); Pyramid Lake Paiute Tribe v. Morton, 499 F.2d 1095 (D.C.Cir. 1974), cert. denied —— U.S. ——, 95 S. Ct. 1351, 43 L.Ed.2d 439 (1975). This rule applies with equal force in cases nominally brought against officers of the Government relating to their official duties. See 6 J. Moore, Federal Practice (2d ed. 1971) ¶ 54.75[4].

While it would be equitable in this instance to require the Government to compensate the members of the class for their legal expenses incurred in a suit to obtain appropriated funds wrongfully withheld by the Executive Branch, the Court lacks the power to do so since there is no authorizing statute.

■ In another application, Mr. Wagshal asks the Court to assess attorney's fees for his personal benefit against the members of the plaintiff class in personam. The Court also lacks the power to do this. Unlike an action in rem, where control of the res coupled with mail notice has been held to satisfy due process, Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the power of a court to render binding in personam judgments depends on personal jurisdiction which is usually acquired via service of process. See Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878). However, in class actions, it has been recognized that the power of the Court to render binding in personam judgments consistent with due process finds its source in the presence of adequate representatives of the class before the court even though no process was served. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). In such circumstances, however, the Court must "carefully scrutinize the adequacy of representation." 3B J. Moore, Federal Practice (2d ed. 1974) ¶ 23.07[1] at 23–357; Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968) (Eisen II). This is particularly true in a case such as the present one where the class was not structured as a (b)(3) class, and class members were never given an opportunity to opt out of the litigation. See Appleton Electric Co. v. Advance-United Expressways, 494 F.2d 126, 140 (7th Cir. 1974).

■ While it is true that the Court earlier certified the named plaintiffs as adequate representatives of the class under Fed.R.Civ.P. Rule 23(b)(1) and (b)(2) for purposes of the merits of the original action, that phase of the action presented quite different questions. The Court was not advised or aware at the time of certification that attorney's fees would be sought from benefiting class members.[1] See Fed.R.Civ.P. Rule 23(c)(4)(A), Rule 23(c)(1); Local Rule 1–13(a)(2)(ii).

1. Mr. Wagshal was originally retained to bring this litigation by the National Council of Community Mental Health Centers, Inc., an association of some, but not all, the com-

The Court in its discretion has determined that the representation of class members here has been inadequate to support *in personam* judgments for attorney's fees against the class members. None of the community mental health centers originally named as plaintiffs and certified as representatives of the class has appeared by separate attorney in the portion of the case relating to Mr. Wagshal's fee applications. *See* 3B J. Moore, Federal Practice, supra. ¶ 23.-07[1] at 23–360, n. 39. While the National Council did eventually retain separate counsel in the fee proceedings, it has expressly disclaimed the ability to represent the class. Moreover, it is not a member of the class since it received no funds released by this litigation, *see* Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and its interests are antagonistic to those of the class on several issues because, among other things, it is seeking return of the fees it has already advanced to Mr. Wagshal as front money. *See* 3B J. Moore, Federal Practice, *supra*, ¶¶ 23.-07[2], [3]. No adequate representative of the interests of the class being present in this proceeding, the Court is unwilling and unable to enter *in personam* judgments against the members of the class.[2]

Payment of attorney's fees is also sought through still another route. The record discloses that a portion of the money released by the litigation remains unused. The amount is more than sufficient to pay any reasonable attorney's fee in this situation and is still subject to the Court's control as a result of orders entered during the proceedings, even though the precise accounting as to this sum must await final auditing.

■■ It remains, therefore, to determine whether attorney's fees can be assessed against this unexpended fund held by H.E.W. The law is settled that where a fund has been created in litigation with the Government, and the Government stands as it does here in the position of a stakeholder required to pay over that fund to qualified beneficiaries, the Court may award a portion of it to the attorney for the beneficiaries as "costs between solicitor and client." Lafferty v. Humphrey, 101 U.S.App.D.C. 222, 248 F.2d 82, cert. denied sub nom., Benton County v. Lafferty, 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957); Emmet v. Whittier, 164 F.Supp. 563 (D.D.C.1958). *See also*, United States v. Anglin & Stevenson, 145 F.2d 622, 629 (10th Cir. 1944). Thus the Court has authority to reimburse the actual plaintiffs or their lawyer for their efforts on behalf of the class by assessment for attorney's fees against the fund.[3] Paris v.

---

munity mental health centers which comprise the class. The agreement between the National Council and Mr. Wagshal, of which the Court was unaware until the present applications were filed, provided that the National Council would pay Mr. Wagshal, a minimum hourly fee and expenses, but that in the event the litigation was successful, an application would be made for an additional fee to be fixed by the Court "in an appropriate amount" from benefiting class members. A series of letters from the National Council to members of the class advised them informally of this arrangement, although it cannot be said they all agreed to it or understood its implications.

2. This problem in no way affects the Court's power to award fees against a fund, *see in-*

*fra*, since this power is *not* founded on the existence of a class action. *See* Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 167, 59 S. Ct. 777, 83 L.Ed. 1184 (1939).

3. H.E.W. also contends that a final order was entered and that Rule 59(e) prohibits reopening for consideration of attorney's fees after ten days. The class by its representatives petitioned for attorney's fees from the outset. The rule does not apply where costs in the form of attorney's fees are sought by the eventually successful party from a common fund created by the litigation. See 6 J. Moore, Federal Practice (2d ed. 1971) ¶ 54.77[2]. Not only are costs usually taxed only after appeal, but in a fund case judicial economy requires that the viability of the fund be first established

Metropolitan Life Ins. Co., 94 F.Supp. 792 (S.D.N.Y.1947); Lafferty v. Humphrey, *supra*.

 The applications may fairly be construed to include an application by the named plaintiffs to be reimbursed for legal expenses incurred by them as representatives of the class in creating a fund for the benefit of the class as a whole. Fed.R.Civ.P. Rule 8(f). Since such a fund still exists, the applications viewed in this light will be granted for it is clear that the representatives of the class incurred legal expenses in creating the fund for the benefit of all class members. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 389–397, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Hall v. Cole, 412 U.S. 1, 93 S. Ct. 1943, 36 L.Ed.2d 702 (1973); Annot., 38 A.L.R.3d 1386 (1971); J. Dawson, "Lawyers and Involuntary Clients: Attorney Fees from Funds," 87 Harv.L.R. 1597 (1974).

It is recognized that this will reduce the fund by the amount of the fee awarded and that under the budget and accounting procedures of H.E.W. this may affect the sum available in the next fiscal year for similar grants. Nothing herein shall be taken in any way to restrict or to limit the right of H.E.W. to reduce future grants to members of the class by their pro rata share of the fee paid from the fund.

The substantial material received from members of the class following notice and presentations by new counsel

for the National Council as well as Mr. Wagshal provide sufficient basis for the Court to proceed to fix a fee.[4] This litigation involved a fairly narrow controversy. It was resolved without trial by motions over a period of a month and a half, although Mr. Wagshal spent additional time in legislative efforts involving this and other cases. Mr. Wagshal's clients were and are well satisfied with his professional efforts and as far as his work on the merits is concerned, it was of high quality. He seeks a fee of $1 million. The National Council suggests an additional fee of $43,979; some members of the class opposed any fee, while some indicated a willingness to pay a pro rata share of a fee that would range upwards somewhat beyond $100,000.

 Mr. Wagshal strenuously urges that he not be compensated on a time basis. He contends that he took the retainer, after several other attorneys had refused, primarily on a contingent basis and since the contingency eventuated he should be paid solely in relation to the sum released from impoundment, here approximately $52 million. There is no merit in this suggestion. *See* Ratner v. Bakery & Confectionary Workers Union, 122 U.S.App.D.C. 372, 354 F.2d 504, 506 (1965) (rejecting a "pro forma scale" for fixing attorney's fees on a quantum meruit basis). The amount released was determined by Congress, not by the litigation. The only contingency was whether or not the plaintiff class would win or lose. In other words, his work contributed in no way to the amount of the award but only to the fact of the

---

finally before expenses to be taxed against it are considered. *See* 6 J. Moore, Federal Practice (2d ed. 1971) ¶ 54.77[9].

The case of Stacy v. Williams, 50 F.R.D. 52 (N.D.Miss.1970), affirmed, 446 F.2d 1366 (5th Cir. 1971), relied on by defendant, is not to the contrary. That case followed Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L. Ed.2d 475 (1967), which in turn explicitly recognized the "common fund" cases as an exception to the American rule that attorney's fees are not generally part of the prevailing parties' costs. *See* 386 U.S. 718–719, 87 S.Ct. 1404.

4. "H.E.W. has not indicated any view as to the appropriate amount of a fee and sought to be heard later on this question if a fee is to be awarded against the fund. Counsel for H.E.W. was informed prior to the October 31, 1974, hearing that he should submit whatever he wished regarding the amount of the fee at said hearing, and counsel also was given the opportunity to submit a post-hearing brief on this matter. In any event, H.E.W. is a mere stakeholder and its views are immaterial."

award itself. If he lost he would have received only the "front money" under his agreement with the National Council. Since he won he should receive recognition for the result but not on any percentage computation based on the recovery.

■ Mr. Wagshal also contends that the Court as a matter of policy should award a fee "at the outer limit of reasonableness" to encourage other private attorneys to undertake litigation of a public interest nature. He points out that some of this type of litigation is unpopular (this was clearly not such a case) and such causes are not always well compensated. He argues that a fee of $1 million would be at the level which he believes large firms would have charged commercial clients and feels his routine time charges contrast unfavorably with these fee charges and the compensation of professional athletes and other personalities. This line of argument is rejected. It is not the function of the Court in setting fees to do more than provide reasonable compensation for work done. Mr. Wagshal should be reasonably paid for his useful time, plus a bonus for the result. Nothing more is warranted, particularly where the fee is to be paid from funds appropriated by the Congress for a far more useful purpose, assistance to the mentally ill.

Upon a careful examination of Mr. Wagshal's account of time logged, a number of problems immediately are presented. As a sole practitioner, his work was at many different gradations of professional responsibility and no flat hourly rate can reasonably be applied to his work as a whole. A considerable amount of his time presentation is based upon loose estimates. It is also striking to note that more than half the time claimed is to compensate him for his efforts to obtain compensation. While the Court must, of course, consider time required to obtain compensation, it is apparent that Mr. Wagshal has spent considerably more time in this direction than the situation required. His fee papers are prolix, repetitive and excessive. This aspect of his time must be substantially discounted, particularly since much of it was spent on what appear to be irrelevancies. On the affirmative side, Mr. Wagshal worked energetically with full devotion to his client. His papers on the merits were of good quality and perceptive. The Court must also take into account that because of friction that arose between him and members of the class during the fee controversy it is not likely that there will be any repetitive business obtained from the class by reason of his efforts.

More and more, United States District Courts are being called upon to fix fees. There is no rule of thumb that can be applied and essentially the Court must exercise judgmental factors quite comparable to those employed by private attorneys when billing clients. The determination of a proper fee for legal services is not an exact science. A few considerations are generally applied in this community. Larger firms emphasize time billing of regular clients. Smaller firms have lower time charges and rely more on contingent arrangements, thus, in effect, becoming party to the litigation. All billing is designed to keep or develop the client. Where legal representation is known to involve no prospect for future billing, fees are higher. There is no standard rate in this community even as between lawyers of comparable ability and responsibility. Some lawyers take into account their reputation and level of past earnings. All are concerned with whether the work has distracted them from other obligations. Results always affect the client's receptivity to the fee suggested. The practices of immediate competitors and a feel for the clients' ability to pay must always be recognized. And so it goes.

When a judge sets a fee he seeks to get a feel for these factors, when applicable, intangible and uncertain as they may be. In addition, the Court must appraise the work of the attorney as he saw it from papers submitted and appearances in court.

In this case, like some other public interest litigation, the attorney seeks compensation from public funds created by Congress to serve a wholly different purpose. The attorney should be paid an adequate fee for his work but that is all. The attorney's interest and the public's cannot be differentiated and to a substantial degree he serves as an officer of the Court to help vindicate a right in the interested segment of the community that needed his help. Thousands of lawyers serve the Government at modest pay and perform services of equal import to the larger public interest. Those lawyers who choose the commendable course of serving the public interest rather than building a more remunerative commercial practice cannot expect the same financial awards as such practitioners sometimes achieve. The law is not a money-grubbing profession; windfalls should not be given to those who successfully represent persons not properly treated by our Government. Awarding of fees is not intended to accomplish other social purposes, nor is it the function of the Court to attempt to equalize financial awards for all types of legal work. Some legal fees in the private sector are excessive. It is becoming increasingly expensive to protect rights of citizens in court. It would be a gross mistake to make the highest level of charges in the private sector a measure of compensation to be paid all attorneys who seek to vindicate an identifiable public interest.

Taking into consideration the factors indicated and those delineated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), and other pertinent cases, the Court has determined that a reasonable award for the time expended in this case is $50,000, and that an additional $15,000 should be awarded for the result, making a total fee of $65,000 in full compensation for legal services rendered the class. This fee shall be paid by H.E.W. from the fund directly to Mr. Wagshal for convenience, see Wewoka, Okl. v. Banker, 117 F.2d 839, 844 (10th Cir. 1941), after deducting $13,216.25, representing attorney's fees already paid him by the National Council for his work in this case. This amount of $13,216.25 shall be paid directly by H.E.W. to the National Council for it to use solely to reimburse individual class members in like amounts for whatever each contributed to the sum paid out for fees.

In all other respects the applications are denied. Out-of-pocket costs are not to be paid from the fund but are to be assessed against H.E.W. in the regular manner through the Clerk of Court.