546 F.2d 1003
 178 U.S.App.D.C. 237
 NATIONAL COUNCIL OF COMMUNITY MENTAL HEALTH CENTERS, INC., et al.
v.
The Honorable F. David MATHEWS, Individually and as
Secretary of Health, Education and Welfare, et al.
Appeal of Jerome S. WAGSHAL.
NATIONAL COUNCIL OF COMMUNITY MENTAL HEALTH CENTERS, INC., et al.
v.
The Honorable F. David MATHEWS, Individually and as
Secretary of Health, Education and Welfare, et
al., Appellants.
 Nos. 75-1335, 75-1353.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 21, 1976.
Decided Nov. 9, 1976.
Rehearing Denied Jan. 13, 1977.
 
 Jerome S. Wagshal, appellee pro se, in 75-1335 and appellant pro se, in 75-1353.
 Eloise E. Davies, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief for F. David Mathews, et al.
 Guy W. Shoup, New York City, for appellee, Nat. Council of Community Mental Health Centers, Inc.
 Charles R. Halpern and Joseph Onek, Washington, D. C., filed a brief on behalf of council for Public Interest Law as amicus curiae.
 Before TAMM, MacKINNON and ROBB, Circuit Judges.
 Opinion for the Court filed by Circuit Judge TAMM.
 TAMM, Circuit Judge.
 
 
 1
 This case arises out of a district court order awarding Jerome Wagshal a $65,000 attorney's fee for successfully prosecuting a claim against the Department of Health, Education and Welfare (HEW) on behalf of the National Council of Community Mental Health Centers (NCCMHC).[1] The Secretary of HEW appeals from the district court's order that Wagshal's fee be paid out of unexpended federal grant funds. Wagshal also appeals arguing that the district court's reliance on a time basis computation formula instead of a percentage of the recovery formula resulted in an unreasonably low fee award. The NCCMHC argues in support of the district court's award from the unexpended funds as it contends that the court lacked in personam jurisdiction over the individual class members and hence, was unable to charge them with payment of the fee.
 
 
 2
 Although we agree with the district court's determination of the amount of the fee and with its conclusion that it did not have the power to assess this fee against the individual class members, we find that the court erred in mandating that the attorney's fee be paid out of unexpended federal grant funds. We therefore reverse the judgment of the district court.
 
 I. FACTUAL BACKGROUND
 
 3
 The federal grant funds involved here were part of the Congressional appropriations authorized under sections 220-224, 271 of the Community Mental Health Centers Act, 84 Stat. 56 (1970), as amended 42 U.S.C. §§ 2688-2688d, 2688u (Supp. V, 1975). The purpose of these grants is to assist public or non-profit private agencies in meeting the costs of construction of mental health facilities for children and to help pay part of the costs of the professional and technical personnel who operate these facilities. Responsibility for the administration of these grants lies with the Secretary of Health, Education and Welfare.
 
 
 4
 HEW released the impounded 1973 grants to the individual class members[2] after the proceedings on the merits indicated that they had been illegally withheld. A portion of these 1973 grant monies remained unused at the time Wagshal instituted his suit for a fee, almost one year after the conclusion of the litigation on the merits.[3] Due to orders entered in the prior proceedings these unexpended funds did not lapse at the end of the fiscal year as would normally occur; rather, they were still subject to the control of the court.
 
 
 5
 The manner in which these federal grant funds are disbursed is particularly important here. Under normal operating procedures, the initial grant is made for the estimated cost of the first year of the project. Should this cost estimate be high in relation to the expenses incurred by the grantee in the first year, the surplus or unexpended funds are included in the computations for future grants. An estimate of the unexpended balances in all of the grantees' accounts at the end of a current budget period is made based on historical averages and then sufficient funds are appropriated to meet the next year's estimated grants. In this way, the unexpended federal grant funds are a significant factor which Congress takes into account each year in formulating the federal budget. See J.A. at 434-35. Should the grantee seek a continuation award for the next year, HEW computes the amount of the grant on the basis of the estimated cost of the program for that year less the grantee's matching funds and the unexpended balance remaining from the previous year's grant.[4]
 
 
 6
 The NCCMHC retained Wagshal pursuant to an agreement which provided that the NCCMHC would pay him a minimum hourly fee and expenses (amounting to $13,216.25), and if the litigation were successful, an additional fee would be sought from the benefitting class members through application to the court.[5] These benefitting class members were not parties to the retainer agreement and the district court was not aware at the time of certification that attorney's fees would be sought from them.[6] Wagshal made no reference to his fee arrangement in any of his original pleadings. The class members were only informally advised of the retainer provisions by the NCCMHC. No evidence that they agreed to or understood the implications of the agreement was submitted to the district court.[7] None of the class members was ever given an opportunity to opt out of the litigation and none appeared by separate attorney in this fee application case.
 
 II. ISSUE ANALYSIS
 
 7
 The long-standing "American rule" on the payment of attorney's fees in the absence of a statute or enforceable contract is that each party pays his own. This rule however is not absolute. Over the years, judicially-created exceptions have been grafted onto the rule. A successful party can now be awarded attorney's fees if his opponent has acted in bad faith or if a substantial benefit has been conferred on a class of persons.[8] Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The problem which faces us is determining whether an exception to the American rule is applicable here.
 
 
 8
 The most troublesome obstacle which we encounter is embodied in 28 U.S.C. § 2412 (1970) which provides:
 
 
 9
 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established by statute or court rule or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation. Payment of a judgment for costs shall be as provided in section 2414 and section 2517 of this title for the payment of judgments against the United States.
 
 
 10
 (Emphasis added). If we find that the unexpended grant funds belong to the United States rather than to the grantees and we cannot find a specific statute providing for the award of attorney's fees against the United States in this situation, the district court's fee award cannot be upheld.
 
 
 11
 We find that the manner of disposition of these unexpended funds is conclusive evidence of their true ownership. As noted previously, these unexpended funds are one factor taken into account in determining the amount of future grants which each grantee will receive. These funds do not remain at the grantee's disposal if they have not been "expended" by the end of the fiscal year.[9] It is only through a subsequent continuation grant approved by HEW that a grantee can again reach these unexpended funds which it failed to use the previous year. These unexpended funds are thus in the safekeeping of the public treasury until their use is once again authorized. See 42 Comp.Gen. 289, 294 (1962). An award of attorney's fees from these funds therefore would be an award against the United States and contrary to 28 U.S.C. § 2412, unless another statute specifically authorizes this award.
 
 
 12
 No statute has been brought to our attention which changes the rule of section 2412 in this situation. The authorization legislation for the appropriation of these funds includes a detailed listing of the purposes for which these grant monies are to be used. Community Mental Health Centers Act, §§ 220, 271, 42 U.S.C. §§ 2688, 2688u (1970). These purposes do not include the payment of attorney's fees. Similarly, the HEW implementing regulations do not provide for the payment of attorney's fees such as are sought here. See 42 C.F.R. § 54.303 (1975). Indeed, one subsection of the uniform administrative requirements and cost principles regulations which apply to these grants[10] provides:
 
 
 13
 (d) Costs of legal, accounting and consulting service(s), and related costs, incurred in connection with . . . the prosecution of claims against the Government, are unallowable.
 
 
 14
 45 C.F.R. Part 74, Subpart Q, Appendix F, § G-31(d) (1975). As these unexpended grant funds belong to the United States until HEW approves a subsequent continuation grant, and there is no specific statutory authorization for an award of attorney's fees against the United States which is applicable here, no attorney's fee may be awarded out of unexpended grant funds as the case falls squarely within the strictures of 28 U.S.C. § 2412. See Pyramid Lake Paiute Tribe of Indians v. Morton, 163 U.S.App.D.C. 90, 499 F.2d 1095, 1096 (1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).
 
 
 15
 The district court sought to circumvent this statutory prohibition by relying on its historic equity jurisdiction to award attorney's fees as costs "as between solicitor and client."[11] The exception it applied is commonly referred to as the "common benefit" or "common fund" exception. This exception means that if a party preserves or recovers a fund for his benefit and the benefit of others, he is entitled to recover his costs, including attorney's fees, from the fund or directly from the other parties enjoying the benefit. National Treasury Employees Union v. Nixon, 172 U.S.App.D.C. 217, 521 F.2d 317, 320-21 (1975). The district court premised its application of this exception on a finding that the United States is a mere "stakeholder" of the unexpended funds at issue here.[12] In doing so, it relied on Lafferty v. Humphrey, 101 U.S.App.D.C. 222, 248 F.2d 82, cert. denied sub nom. Benton County v. Lafferty, 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957). Lafferty, like the case sub judice, was a fee application case which arose out of a prior case on the merits which ordered the disbursement of certain land-grant funds improperly withheld by executive officials. Clackamas County v. McKay, 94 U.S.App.D.C. 108, 219 F.2d 479 (1954), vacated as moot, 349 U.S. 909, 75 S.Ct. 599, 99 L.Ed. 1244 (1955). However, the legislation providing for these funds in Clackamas specifically directed the executive officials "to disburse the balances left at the end of each year." Id. at 487. As the discussion supra indicates, this is contrary to the manner in which Congress has appropriated the grant funds with which we are concerned. Instead of providing for the complete expenditure of all grant funds each year, the legislature has relied on a certain surplus of funds from previous years to act as "seed money" for the following years' grants. See J.A. at 434. The government's position as "stakeholder" in Clackamas and Lafferty therefore[13] allowed the award of counsel fees from those grant funds as all of those funds belonged to the grantees. This is not the case here. The United States is more than a mere stakeholder in this instance. It is the owner of the unexpended grant funds. The application of the common fund rule then immediately collides with the express provision of 28 U.S.C. § 2412.[14] We are therefore constrained to follow the specific statutory prohibition and disallow the award of attorney's fees under the common fund rationale.
 
 
 16
 The only other avenue of relief available to Wagshal is for the court to charge the individual class members with his $65,000 attorney's fee. As the district court discussed in full,[15] this alternative is not open to us. The class was properly certified under Fed.R.Civ.P. 23(b)(1) and (2) for the purpose of litigating the merits of the impoundment case because the NCCMHC adequately represented the interests of the class members in that suit. However, the NCCMHC does not represent the interests of the individual class members in this fee application case. In this suit it merely seeks the return of its initial fee payment to Wagshal and supports the payment of his fee from the unexpended grant funds. As none of the individual class members ever made an appearance before the district court and there was no one else present to adequately represent their interests in the fee case, the district court properly found that it lacked in personam jurisdiction over the class and therefore could not award the fee against them. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). One of the touchstones of due process required by a Rule 23 class action which was sorely lacking here, is that the class be adequately represented. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Wagshal should have provided in his retainer agreement for full payment of his fee or else he should have structured his pleadings in the district court in such a way as to inform the court and class members that he would be seeking an additional fee if he were successful on the merits.
 
 
 17
 Finally, Wagshal contends that the amount of his fee should have been determined on a quantum meruit basis which would have resulted in a fee equal to a certain percentage of the $52 million released by HEW. We find that the district court properly followed the guidelines set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) which this court adopted in Evans v. Sheraton Park Hotel, 164 U.S.App.D.C. 86, 503 F.2d 177, 188 (1974),[16] and that the fee of $65,000 was an eminently reasonable award in this case.
 
 III. CONCLUSION
 
 18
 Although we recognize that Wagshal has rendered a significant service on behalf of the community mental health centers we cannot award him a reasonable fee. Title 28 U.S.C. § 2412 prevents us from charging the fee against the unexpended federal grant funds and the lack of in personam jurisdiction over the individual class members makes a fee award against them impossible. As the Supreme Court has recently stated, Congress has not " extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." Alyeska Pipeline Service Co. v. Wilderness Society, supra, 421 U.S. at 260, 95 S.Ct. at 1623. The district court's award of attorney's fees must therefore be reversed.
 
 
 19
 So ordered.
 
 
 
 [1]
 The suit on the merits brought about the release of $52 million of federal grants which had been authorized by Congress for fiscal year 1973 but which were illegally impounded thereafter by the President. National Council of Community Mental Health Centers, Inc. v. Weinberger, 361 F.Supp. 897 (D.D.C.1973) (hereinafter referred to as NCCMHC I )
 
 
 [2]
 In the suit on the merits the district court certified a class consisting of 138 community mental health centers, some of which are members of the National Council of Community Mental Health Centers, Inc., pursuant to Fed.R.Civ.P. 23(b)(1) and (2). All of these individual class members had applied for first-year grants for fiscal year 1973. NCCMHC I, 361 F.Supp. at 899-900
 
 
 [3]
 National Council of Community Mental Health Centers, Inc. v. Weinberger, 387 F.Supp. 991, 994 (D.D.C.1974) (hereinafter referred to as NCCMHC II )
 
 
 [4]
 See Affidavit of John P. Spain, J.A. at 433-34
 
 
 [5]
 The retainer provision in the agreement reads:
 II. Class Fee
 It is understood that the above hourly rate ($35.00) and initial retainer is substantially less than would normally be charged for a matter of this nature. The proposed action will be filed as a class action on behalf of a class of community mental health centers, as well as the National Council. If, as a result of this litigation, a substantial benefit is conferred upon the plaintiff class, it is agreed that we will apply to the Court for an appropriate fee award from those class members benefiting therefrom. The Court-determined counsel fee would not be drawn in any measure from the National Council, whose obligations are fully stated in the preceding paragraph. In determining the appropriate amount of counsel fees to be awarded with respect to class members, the Court will be advised of and take into account the amount of funds provided by the National Council.
 Wagshal Brief at 12 n.15.
 
 
 [6]
 NCCMHC II, 387 F.Supp. at 993
 
 
 [7]
 Id. at 993-94 n.1
 
 
 [8]
 See also F. D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129-30, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); Hall v. Cole, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718-19, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967)
 
 
 [9]
 "(F)unds can be 'expended' only by disbursing them to grantees pursuant to a billing for costs incurred, or a request for an advance payment for costs to be incurred, in the operation of grant supported projects." J.A. at 432
 
 
 [10]
 42 C.F.R. § 54.309 (1975)
 
 
 [11]
 NCCMHC II, 387 F.Supp. at 994. See also Sprague v. Ticonic National Bank, 307 U.S. 161, 164-65, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Lafferty v. Humphrey, 101 U.S.App.D.C. 222, 248 F.2d 82, 84, cert. denied sub nom. Benton County v. Lafferty, 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957)
 
 
 [12]
 NCCMHC II, 387 F.Supp. at 994
 
 
 [13]
 Lafferty v. Humphrey, supra, 248 F.2d at 84
 
 
 [14]
 The Supreme Court has recently recognized (but not resolved) the conflict arising between 28 U.S.C. § 2412 and judicially-created exceptions to the "American rule" when the United States or an agency thereof is a party to the litigation. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 265-68, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)
 
 
 [15]
 NCCMHC II, 387 F.Supp. at 993-94
 
 
 [16]
 See also Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L.Rev. 849 (1975)