**NATIONAL ASSOCIATION OF FARM-WORKER ORGANIZATIONS, et al., Appellants,**

**v.**

**F. Ray MARSHALL, Individually and as Secretary of the United States Department of Labor, et al.**

**No. 78–1666.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1979.

Decided Nov. 19, 1979.

As Amended Nov. 23, 1979.

**95.** 7 U.S.C. § 608c(15)(B) (1976).

Herbert Semmel with whom John W. Garland and L. Thomas Galloway, Washington, D.C., were on the brief, for appellants.

Robert S. Greenspan, Atty., Dept. of Justice, Washington, D.C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Earl J. Silbert, U.S. Atty., and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Also Paul Blankenstein and Leonard Schaitman, Attys., Dept. of Justice, Washington, D.C., entered appearance, for appellees.

Before MacKINNON and WILKEY, Circuit Judges, and GORDON *, United States District Judge for the Western District of Kentucky.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

Appellants seek reversal of the District Court's denial of their petition for attorneys' fees following their successful class-action suit against the Secretary of Labor that resulted in the release of 12 million dollars in federal CETA grants that had been targeted for farmworker employment training and opportunities by Congress in 29 U.S.C. § 873, § 801, et seq. The District Court determined that the Secretary had under-allocated funds [1] for the farmworker training program and ordered the release of the additional funds. Grants totalling $12 million were thereafter awarded to twenty-seven members of the class, including three of eight named plaintiffs.

## I

The controlling statute in this case provides:

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title *but not including the fees and expenses of attorneys* may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action.

28 U.S.C. § 2412 (emphasis added). Recognizing that this statute barred the payment of attorneys' fees from government funds, plaintiffs devised a unique proposal. They suggested that the government disperse 99.5% of the grant funds to farmworker program grantees and withhold the last .5%. When the grantees had spent their grant money, the government was to release to plaintiffs' attorneys the withheld .5% as payment of attorneys' fees. Plaintiffs' theory is that once grant funds have been spent by grant recipients, the funds are no longer governmental in nature, hence unaffected by 28 U.S.C. § 2412.[2]

Plaintiffs contend that their proposal distinguishes two cases decided by this Circuit

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. In FY 1977, the Secretary reserved $63.2 million for the Migrant and seasonal farmworkers manpower program. Plaintiffs successfully contended that 29 U.S.C. § 873(b)(2) required the Secretary to reserve at least 5% of the funds he allocated under 29 U.S.C. 813(a)(1) for the Comprehensive Manpower Program, to farmworkers' programs. Thereafter, an additional $12 million was released to reach the 5% allocation.

The codifications of 29 U.S.C. §§ 873(b)(2) and 813(a)(1) have been changed to 29 U.S.C. §§ 873(c)(3) and 842 by the Comprehensive Employment and Training Act Amendments of 1978, P.L. 95–524, October 27, 1978.

2. Plaintiffs argue in the alternative for an even lesser standard—once grant funds have been *obligated* to grant recipients, they are no longer governmental in character. This argument is precluded by our rejection of plaintiffs' expenditure of funds theory.

that the District Court relied on in denying their claim: *National Association of Regional Medical Programs v. Mathews*, 179 U.S.App.D.C. 154, 551 F.2d 340 (D.C.Cir. 1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977) ("NARMP") and *National Council of Community Mental Health Centers v. Mathews*, 178 U.S.App.D.C. 237, 546 F.2d 1003 (D.C.Cir. 1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977) ("NCCMHC"). The essence of these decisions, plaintiffs assert, is that § 2412 bars payment of attorneys' fees only from *unexpended* federal grant funds.

We interpret these cases differently. In *National Council of Community Mental Health Centers v. Mathews*, 178 U.S.App.D.C. 237, 546 F.2d 1003 (D.C.Cir. 1976), an attorney was successful in securing the release of $52 million of federal grants that had been authorized by Congress for Community Mental Health facilities for fiscal year 1973 but which the court found had been illegally impounded by Presidential Order as an economy measure. On the attorney's application the District Court fixed his fee at $65,000 and ordered it paid out of federal grant funds that were unexpended by the end of the fiscal year. Under the terms of the appropriation unexpended funds did not lapse but were included in future grants to reduce the amount of appropriated funds needed for future years. The unexpended funds thus continued as United States funds until they were expended for the purposes authorized by the statute. The payment of an attorney's fee was not an authorized purpose. Under such circumstances we held that the court's order to pay the attorney's fee from the unexpended grant funds would contravene 28 U.S.C. § 2412 as an award of attorneys' fees from funds of which the Government was the "owner". *See Pyramid Lake Paiute Tribe of Indians v. Morton*, 163 U.S.App.D.C. 90, 499 F.2d 1095 (D.C.Cir. 1974), *cert. denied* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). In so ruling we decided that the Government was not a mere stakeholder of the unexpended funds and that the historic equity jurisdiction to award attorneys' fees as costs "as between solicitor and client" was not available to invoke the "common benefit" or "common fund" doctrines to support the fee award. 178 U.S. App.D.C. at 241–242, 546 F.2d at 1007–1008.

We reached the same conclusion for much the same reasons in *National Association of Regional Medical Programs v. Mathews*, 179 U.S.App.D.C. 154, 551 F.2d 340 (D.C.Cir. 1976) where the facts were similar to those in the Community Health Centers case, 178 U.S.App.D.C. 237, 546 F.2d 1003. In the *Regional Medical Programs* case the attorney succeeded in securing the release of presidentially impounded funds amounting to $100 million that had been appropriated for grants to assist medical institutions. In its attempt to circumvent the prohibition of 28 U.S.C. § 2412, the District Court awarded an attorney's fee of $200,000 and ordered the benefited class to pay the fee from non-grant funds to the fullest extent possible. At the same time it ordered the Department of Health, Education and Welfare (HEW), to whom the appropriation had been made, to make a similar sum of money available to the Regional beneficiaries from unexpended direct operations, or as otherwise stated from unexpended grant funds. On these facts we concluded that the Government was being charged indirectly for the attorney's fee in violation of 28 U.S.C. § 2412 because the unexpended funds that were being allocated to pay the attorney's fee at the end of the budget period would otherwise lapse into the United States Treasury and could not be obtained except on the authorization of HEW, which was lacking. Thus, since the unexpended funds were still United States funds the statute prohibited their use to pay an attorney's fee. We also held that since the participating members of the class had interests with respect to the fee that were in conflict with the interests of the non-participating members, none of the latter group that had not participated in the suit could be charged for any portion of the attorney's fee because their interests were not adequately represented by the attorney who represented the participating members of the class.

We thus hold that this case is not distinguishable from the *Community* or *Medical Programs* cases. Accordingly, this court cannot accept plaintiffs' theory that setting aside .5% of the grant money and awarding it as attorneys' fees after the bulk of the grant (99.5%) has been spent erases the governmental character of the money reserved. Although plaintiffs adopt this theory in an attempt to distinguish the *Community* and *Medical Programs* cases, in which this court relied upon the reversion of unexpended federal grant funds to the government, plaintiffs miss the breadth of the court's reasoning. In those cases we underscored the reversion of unexpended funds to illustrate that grant money is federal, hence incapable of use for payment of attorneys' fees under § 2412. Plaintiffs' proposal may successfully evade the court's example, but not its rationale. Federal grant money does not lose its federal character. The .5% of the grant that plaintiffs desire continues to be United States money.

This common sense characterization is bolstered by the government's pinpointing of factors further evidencing the immutable federal nature of the grant funds at issue here. The Congressional purpose of the funds is to alleviate unemployment among migrant and seasonal farmworkers. In order to ensure the effectuation of this purpose, the Secretary has continuing control over the funds, even while they are in the grantee's hands, and can audit the grantee's accounts or recall the funds. In *Community* we emphasized similarly clear federal purposes and control in rejecting plaintiffs' counsel's application for attorneys' fees. We found there, as here, that § 2412, in the absence of a statute authorizing payment of attorneys' fees, bars such payment.

It follows, then, that plaintiffs' argument that 29 U.S.C. § 802(b)[3] does not expressly require reversion of federal funds to the Treasury once they've been obligated to grantees, is immaterial. Whether unexpended funds revert to the Treasury or to the farmworkers program, or whether they

are fully spent, these funds cannot shed their federal character. *National Treasury Employees Union v. Nixon*, 172 U.S.App. D.C. 217, 521 F.2d 317 (D.C.Cir. 1975), is thus distinguishable. We found § 2412 inapplicable there, because plaintiffs' efforts resulted in the release of funds that were payable as *salary* to government employees, in which moneys the government has no interest or right of continuing control.

## II

■ An alternative avenue explored by plaintiffs' counsel was to ask the District Court to assume personal jurisdiction over the absent class members for a fee award to be levied directly against them. Aside from our concern that any fees assessed against grant recipients would in practice be paid from government grant funds, a result we must disallow, it is not clear whether the interests of the absent class members would be adequately represented. At a minimum, as plaintiffs admit, notice of the proposed fee award would have to be provided, and very possibly counsel appointed or allowed to appear.

The District Court found "no compelling reason . . . to take so active a part in the completion of this litigation", citing "considerations of judicial economy and detachment". (App. 56, 57) We agree, believing as we did in *Community* that counsel:

> should have structured his pleadings in the district court in such a way as to inform the court and class members that he would be seeking an additional fee if he were successful on the merits. 178 U.S.App.D.C. at 242, 546 F.2d at 1008, 1009.

## III

We acknowledge the equitable considerations supporting plaintiffs' plea for an award of fees. "But for" plaintiffs' suit, the Congressional intent embodied in 29 U.S.C. § 813(a)[4] that 5% of the Comprehen-

---

**3.** Recodified at 29 U.S.C. 822(c), *see* note 1 *supra.*

**4.** *See* note 1 *supra* for recodification.

sive Manpower Program funds be reserved for the Migrant and seasonal farmworkers' program, would not have been realized. Yet the authorities cited within this opinion do not allow decision of this case along purely equitable grounds. First, § 2412 precludes the award of a fee from government funds, which we are convinced is the character of the funds from which an award is sought here. Secondly, this court in *Community* and *Medical Programs* directed counsel to make pre-litigation arrangements for payment of fees, curbing any possibility that grant recipients should now be subjected to in personam jurisdiction or forced to defend their interests by retention of counsel.

For the reasons stated herein, we

*Affirm.*