**ALBEE HOMES, INC. and Albee Summit Homes, Inc.**

v.

**Meir LUTMAN.**

**Civ. A. No. 33407.**

United States District Court
E. D. Pennsylvania.

Nov. 3, 1967.

876

Modell, Pincus, Hahn & Reich, by Pace Reich, Philadelphia, Pa., for plaintiffs.

Goodis, Greenfield, Narin & Mann, by Allen J. Levin, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

This case arises out of a business transaction in which defendant exchanged a 50% interest in Albee Summit Homes, Inc. ("Summit"), a 7.5% interest in Albee Tri-State Homes, Inc. ("Tri-State"), and a 7.5% interest in Albee Grand Homes, Inc. ("Grand") for 14.5 shares of Albee Homes, Inc. ("Albee"). Defendant had been employed by Summit and after the exchange continued to be employed by Albee. Plaintiffs' claim was that defendant, while employed by plaintiffs, had drawn or borrowed substantially more than he was entitled to, claiming $76,899, with interest. Defendant's contention was that in addition to his salary with Summit he was entitled to a 5% commission on his own sales on credit and a 6% commission on his own sales for cash, which he never received. Defendant conceded a $30,000 overdraft, but contended that in October 1960 there was a mutual forgiveness of indebtedness,—by Summit of the $30,000 and by defendant of the unpaid commissions. The balance of the alleged overdraft was disputed.

Defendant also filed a counterclaim in three counts,[1] asserting (1) that he exchanged his stock in Summit, Tri-State and Grand for Albee stock as a result of fraudulent misrepresentation as to the value of Albee; (2) that his salary with Albee was $35,000 per year, of which he received only $20,000; he claimed $15,000 with interest.

The jury, in answer to interrogatories, found for defendant on plaintiffs' claim, for plaintiffs on Count I of defendant's counterclaim, and for defendant on Count II of the counterclaim in the amount of $18,903.00.

1. Count III was withdrawn.

Plaintiffs filed motions for judgment n. o. v. or for a new trial, but the former has been abandoned. Defendant filed a motion for a new trial on Count I of the counterclaim. Plaintiffs urged three grounds in support of their motion: (a) that we erred in permitting the withdrawal of a stipulation; (b) that the jury failed to consider six checks paid after October 1960, the date of the alleged forgiveness; (c) that the conduct of the trial judge created an atmosphere detrimental to the plaintiffs.

We granted a partial new trial as to four [2] of the six checks, all dated after the date of the alleged forgiveness, even though there had been no exception at the trial to permitting the jury to find that they were covered by the forgiveness. We felt that fundamental fairness required this result. We denied a new trial on the other two grounds without opinion because we thought them plainly without substance. However, since we have concluded that defendant's motion merits an opinion, we might just as well discuss briefly plaintiffs' motion.

### 1. *Permitting withdrawal of a stipulation.*

■■■■ Defendant stipulated that a long series of checks were properly chargeable to him. Counsel later discovered that two checks had been inadvertently included in the stipulation and the court permitted defendant to withdraw those two from the agreement. "A court may relieve a party of his stipulation if necessary to prevent an injustice, particularly where facts contrary to the stipulation are established by the evidence." H. B. Zachry Company v. United States, 344 F.2d 352, 357, 170 Ct.Cl. 115 (1965). And in any event, since the jury found a forgiveness of defendant's indebtedness, there could have been no conceivable prejudice to plaintiffs.

### 2. *The trial judge created an atmosphere detrimental to plaintiffs.*

■■■ It would serve no useful purpose to set forth at length the matters of which plaintiffs complain. Suffice it to say that they were either rulings of law, were called for by plaintiffs' counsel's conduct of the trial, or are taken out of context. As to the last, even when considered out of context and on their face, they are totally innocuous. Of equal importance is the fact that plaintiffs' counsel made no objection, did not move for a mistrial, and asked for no corrective action. In Faudree v. Iron City Sand & Gravel Company, 315 F.2d 647 (C.A. 3, 1963), the court said, at pages 651–652:

"Finally, it should be noted that at no time during the trial did defendant's counsel take exception to any remark made by the trial judge, nor did he make any formal objection to any of the matters he now contends were so prejudicial as to justify the granting of a new trial. If in fact defendant's counsel felt aggrieved by the alleged prejudicial comments and conduct, he should have called the matter to the court's attention so as to give the court an opportunity to take corrective action. * * * *"

### 3. *Defendant's motion for new trial on Count I of the counterclaim.*

We charged:

" * * * he [defendant] must prove that there was an intentional representation which was intentionally false and upon which he acted and relied upon reasonably; in other words, that his reliance upon that was that of a reasonable man. * * * *"

And again:

" * * * and if you find that Mr. Lutman reasonably relied upon that * * * *"

■■■ There are really two prongs to "reasonable reliance" in cases of fraudulent representation. One involves the

---

2. This was an inadvertence. The new trial should have been as to all six and the order will be corrected.

necessity of independent investigation by the representee; the other reflects the conception that where the representation is palpably and obviously ridiculous, it would be unreasonable to rely on it. As to the former, the RESTATEMENT OF TORTS, § 540 states:

"The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation."

As to the latter, Section 541 of the RESTATEMENT says:

"The recipient in a business transaction of a fraudulent misrepresentation is not justified in relying upon its truth if its falsity is obvious."

■■ Since every significant aspect of this case occurred in Ohio, the law of that State must govern. Ohio has adopted Section 540, Steiner v. Roberts, Ohio App., 131 N.E.2d 238, 242 (1955), and under Ohio law, no investigation by the representee is ordinarily required. In *Steiner*, the court said, at page 242:

"If we assume the truth of Steiner's testimony that he relied upon the representation as to income, was he not justified in so doing, and hence not required to investigate to determine the true facts?

"Certainly, in such circumstances as we find in this case, a defrauded party does not owe to the party who defrauds him an obligation to use diligence to discover the fraud. A failure on the part of Steiner, under the facts herein, to use ordinary care to inquire from the tenants or elsewhere, could not defeat his right to recover.  * * * "

Ralston, et al. v. Grinder, et al., 8 Ohio App.2d 208, 221 N.E.2d 602 (1966), cited by plaintiffs, is not apposite. There, it was represented to plaintiffs that the land they were purchasing contained three acres. In fact, it contained only 1.4874 acres. However, there was no warranty, the property was visited and inspected several times by plaintiffs, and they executed a second mortgage which contained a description of the property by metes and bounds as well as the correct area of the tract. Under these circumstances, the court held that plaintiffs were not justified in relying on the representations. The holding would appear to be fully in accord with REST. TORTS, § 541, supra, and in no way derogates from the authority of Steiner v. Roberts, supra.

■ The charge as given could be construed to mean that the jury could find that either (a) defendant Lutman acted unreasonably in relying on the representation alone without investigation, or (b) that the representation was so plainly false that to act on it was unreasonable. If it meant the former, it was incorrect; if it meant the latter, it was correct. It is axiomatic that where an instruction is susceptible to two constructions, one of which is correct and the other of which is incorrect, a new trial must be granted. In accord with the foregoing, we enter the following

## ORDER

And now, November 3, 1967 it is ordered as follows:

1. The Order entered October 3, 1967 is modified to provide that plaintiffs' motion for a new trial is granted as to checks Nos. 5132, 5133, 5144, 5559, 5633 and 5647; in all other respects the motion is denied.

2. Defendant's motion for a new trial on Count I of the counterclaim is granted.