**NATIONAL ASSOCIATION FOR MENTAL HEALTH, INC., et al.,
Plaintiffs,**

v.

**The Honorable Caspar W. WEINBERGER et al., Defendants.**

**Civ. A. No. 1812–73.**

United States District Court,
District of Columbia.

Sept. 4, 1975.

Bruce E. Titus, U. S. Dept. of Justice, Washington, D. C., for defendants.

Jerome S. Wagshal, Washington, D. C., pro se.

Guy W. Shoup, for National Council of Community Mental Health Centers, Inc.

## MEMORANDUM

FLANNERY, District Judge.

This matter is before the court on petition of plaintiffs' counsel, Jerome S. Wagshal, for the award of an appropriate attorney fee from the benefiting plaintiff classes. This case on the merits involved defendants' impoundment of funds appropriated by Congress for mental health and alcoholism research and for training, prevention, treatment and rehabilitation of alcoholism. The case also involved defendants' discontinuance of certain statutorily authorized programs. On February 7, 1974, the court found that the impoundments and other actions were illegal and ordered obligation of all impounded funds and cessation of all inconsistent actions by defendants. On September 4, 1974 petitioner filed the instant application for attorney fees. The application has been opposed by the United States to the extent that any fee is sought from grant funds. Opposition also has been filed by some members

of each of the plaintiff classes. The class members' opposition focuses largely on whether the court can order an *in personam* fee award to be paid by class members and on whether the eleventh amendment bars a fee assessment against certain class members. The court also has received substantial comment from other class members in support of Mr. Wagshal's petition. The court has considered the extensive memoranda and comments filed by the participants and held a day-long hearing into this matter. This litigation has been lengthy and complex and has been described fully in previous papers filed by counsel and by the court, particularly the court's Findings of Fact and Conclusions of Law, filed February 7, 1974. The court will not repeat a description of these matters except as relevant to the instant proceeding.

Petitioner rests his fee application primarily upon the principles enunciated in *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), and its progeny. He seeks an attorney fee from the three benefiting classes and has suggested different mechanics for payment of the fee, depending upon which class is involved. Generally, Mr. Wagshal suggests that the court order the fee paid from the grant funds currently under control of the court or that the court enter *in personam* orders directing individual class members to pay pro rata shares of the fee directly to him. Class 1 included all persons who had submitted or who would submit applications for mental health or alcoholism research or training grants which were to be funded pursuant to fiscal 1973 or fiscal 1974 appropriations under the Public Health Service Act. There are approximately 470 Class 1 members who benefited from this court's final Order and Judgment. The class members could not be identified until after the court's final Order and Judgment. As to Class 1 members petitioner does not seek a fee *in personam* but rather seeks a fee only from the funds cur-

rently held by order of the court and from other funds which might remain unexpended by Class 1 grantees. Class 2 included all persons who have submitted or shall submit applications for alcoholism project grants which were to be funded in fiscal 1973 and 1974 under the Community Mental Health Centers Act. As with Class 1, the final grantees in Class 2 and thus the benefiting plaintiffs could not be determined until after the court's Final Order and Judgment. There are approximately 250 Class 2 members. Class 3 is made up of all states entitled to allotment of fiscal 1973 and 1974 alcoholism formula grant appropriations under the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970. There were 55 total awards to states for fiscal 1973 and 1974. The Class 3 grantees could have been determined prior to the court's Final Order and Judgment. As to Classes 2 and 3 petitioner seeks a fee either from funds held by court order or a fee assessed *in personam* against the class members. All members of each class have been given notice of the pendency of the instant fee application.

In the case on the merits, substantial benefits were conferred upon each class. The suit sought release of fiscal 1973 funds and a declaratory judgment that 1974 funds also had to be released at the appropriate time. For Class 1, $53,351,-000 in 1973 funds and $204,739,000 in 1974 funds were released. For Class 2 the same year's figures were $39,-319,000 and $71,556,000. For Class 3 the figures were $30,000,000 and $45,-600,000. Thus, the benefits for the three Classes amounted to $444,565,000. Further, the final judgment in this action halted defendants' illegal attempts to curtail statutorily authorized programs.

This action on the merits was commenced on September 24, 1973, on be-half of 33 named plaintiffs. The principal funding plaintiff was the National Association for Mental Health [NAMH]. The NAMH agreed to pay Mr. Wagshal $35 per hour with the understanding that if Mr. Wagshall obtained relief for plaintiffs, then Mr. Wagshal would petition the court for a fee from the benefiting plaintiff classes. The court was not informed of this fee arrangement until the present fee application was filed. To date Mr. Wagshal has billed NAMH $27,580.10 and has been paid $24,344.64. Mr. Wagshal proposes that out of any fee awarded by the court, NAMH should be reimbursed for its substantial expenses since NAMH itself was not a grantee in the sense of receiving any of the released funds. NAMH, in papers filed with this court, joins in this suggestion that it be reimbursed.

 The present application presents a variety of issues, many of which have been addressed by the court in the case of *National Association of Regional Medical Programs v. Weinberger,* 396 F.Supp. 842 (D.D.C.1975), appeal pending [hereinafter sometimes referred to as *RMP*]. Where identical or substantially similar matters have been addressed in the *RMP* case, the court will not repeat its analysis in this case. In *RMP* the court held that attorney fees could be paid from the grant funds ordered released by the court. The court rejected defendants' argument that payment of such a fee would violate 28 U.S. C. § 2412 and the Public Health Service Act. Defendants, in their final prehearing memorandum in this case, have admitted that the courts' ruling in *RMP* on the power to use grant funds to pay a fee is dispositive of the same issue in this case.[1] The court recognizes that the statutes involved in the instant case differ somewhat from those involved in *RMP* but nevertheless the same basic reasoning and analysis leads to the con-

1. The court recognizes, of course, that defendants do not agree with this court's holding in *RMP* and that by admitting the dis-positive nature of the holding in that case, defendants do not waive their right to appeal that holding in either case,

clusion that the court can order a fee paid from grant funds, including those grant funds currently held by defendants pursuant to earlier order of this court. *See* Order Reserving Funds *Pendente Lite,* filed Feb. 12, 1975; *RMP, supra* at 3–8 and cases cited therein. *See also Ojeda v. Hackney,* 452 F.2d 947 (5th Cir. 1972) (welfare monies in fund under control of court could be used to pay attorney fee).

At pages 9–11 of the *RMP* opinion, the court held that that case was a proper one in which to award attorney fees. Similarly, in this case Mr. Wagshal represented three large Classes which have benefited greatly from the litigation brought on their behalf. Further, in this case the chief funding plaintiff, the National Association for Mental Health, also urges that it be reimbursed for the fees it has paid Mr. Wagshal. The petition by the successful attorney and the request by funding plaintiff both can be considered by the court. *See Lindy Bros. Builders, Inc. v. American R. & S. San. Corp.,* 487 F.2d 161, 163 n. 1, 164–66 (3d Cir. 1973). In light of the great benefit conferred upon the plaintiff classes and because those classes have not shared the expenses of the litigation, the court concludes that this is an appropriate case for the court to exercise its equitable powers and award a reasonable fee to the plaintiffs' attorney and to reimburse the funding plaintiffs for the expenses they have incurred.

■ The court must next consider how the fee should be paid. In a similar case, *National Council of Community Mental Health Centers, Inc. v. Weinberger,* 387 F.Supp. 991 (D.D.C.1974), *appeal pending,* the court ordered the fee paid from grant funds held by defendants. As in this case, these funds previously had been ordered released by the court.

Similarly, in this case defendants presently are holding over $119,000 of grant funds from which an attorney fee can be paid. In addition, in the future there likely will be additional unexpended or unused grant funds which will be returned to defendants by the grantees. These funds can be added to or substituted for the funds presently held by defendants and used to pay a fee. *See* Order Reserving Funds *Pendente Lite, supra.*[2] All of these funds are part of the monies originally ordered released by the court and are still subject to the court's jurisdiction to make certain that its final order and judgment are properly enforced. Having jurisdiction over this fund of money, the court can order a fee paid out of it. *See National Council of Community Mental Health Centers, Inc. v. Weinberger, supra. See also Lindy Bros. Builders, Inc. v. American R. & S. San. Corp., supra.*

■ Alternatively, petitioner asserts that the court can order a fee paid by the benefiting members of Classes 2 and 3. Indeed, with regard to Class 3, petitioner suggests that the court order the states and other entities which make up Class 3 to pay their pro rata share of any fee award directly to Mr. Wagshal. Several states vigorously have opposed such assessment against the states, arguing lack of *in personam* jurisdiction and the bar of the Eleventh Amendment. While this court held in the *RMP* case that it did have *in personam* jurisdiction over individual members of the plaintiff Class such that the court could order individual members of the Class to pay a fee directly to Mr. Wagshal, the same holding is not compelled by the facts of this case. In *RMP* all Class members received formal, court-ordered notice of the proposed final judgment and all Class members were invited to comment

2. Just because these grant funds may be returned to defendants unexpended by grantees does not mean that they cease being grant funds. As defendants have noted, many of these funds remain in the grantee's account and become available for obligation to the grantee in a subsequent budget period. *E. g.,* Affidavit of John P. Spain, filed Feb. 10, 1975.

upon it. Thereafter they obtained the benefits of the court's final judgment. At the fee proceeding, no RMP objected to an *in personam* fee. In the instant case no court-ordered notice of the pendency of this action was at any time sent to members of any class. Certainly, only Class 3 could have been notified but even this was not done. The only court-ordered notice that Class members have received in this case is the notice of the fee application and this notice has provoked substantial opposition. A commentator recently commented on a similar, though hypothetical situation:

> If it is not possible to find a fund or other distributing agent . . ., the alternative will be to impose personal liability on the beneficiaries. The reason usually given for shielding them from personal liability, as distinguished from a mere subtraction from the benefit produced, is that they did not request either the lawyer's services or the benefit itself. This reason is equally valid where a class action decree has established rights in their favor, but without concurrence on their part and perhaps without their knowledge. The encroachment on freedom of choice would merely increase in scale and become more oppressive as the increasing resort to class suits extends the ranks of silent and passive beneficiaries and the kinds of benefits that are showered on them. To make them personally liable to pay lawyers' fees because rights had been conferred on them through the binding effect of a class action decree would enable the successful lawyers not merely to solicit but to conscript clients.

Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation,* 88 Harv.L.Rev. 849, 919 (1975). The court finds this reasoning persuasive in the context of this case, particularly since there is a fund from which a fee can be paid. While it might be within the bounds of due process for the court to order Class 2 and Class 3 grantees to pay a fee directly to Mr. Wagshal, the court declines to do so.[3] An attorney fee proceeding is peculiarly committed to the discretion of the court. The award of fees, at best, is an exception to the strong American rule against award of attorney fees. *E. g., Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Under the circumstances of this case it would not be appropriate for the court to exercise *in personam* jurisdiction over Class 2 and Class 3 plaintiffs for purposes of payment of the fee. *Cf. National Council of Community Mental Health Centers, Inc. v. Weinberger, supra* at 994. *See also Wilderness Society v. Morton,* 161 U.S.App.D.C. 446, 495 F.2d 1026, 1036 n. 8 (1974), *rev'd, Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Any fee approved by the court will be paid from the fund under control of the court. *See* Order Reserving Funds *Pendente Lite, supra.* In light of the foregoing it is also unnecessary to determine whether an *in personam* fee award with regard to certain Class 2 and Class 3 members would run afoul of the Eleventh Amendment.

 Defendants have deposited $119,592.00 in an account to the name and credit of the court. It is from these

---

3. By the preceding statement in text, the court does not intend to indicate any view on the merits of whether proper *in personam* jurisdiction has been obtained within the context of this fee proceeding. The court notes that under almost identical circumstances the court in *National Council of Community Mental Health Centers, Inc. v. Weinberger, supra,* held that there was no

*in personam* jurisdiction. Certain states have relied upon that holding and have noted further that most of the fee application memoranda never were served upon them. In light of the objections expressed at the July 17, 1975 hearing, the *in personam* jurisdiction issue would present a very close question.

funds that the court shall award a fee. The court will determine the amount of the fee in the manner set forth at pages 11–21 of its *RMP* opinion. It is largely uncontested that on the merits of the instant case Mr. Wagshal devoted at least 736.5 hours. He has presented logs of this time to the court. Mr. Wagshal estimates that this time ought to be increased by at least one-third to 980 hours. He asserts that since he was taking the case primarily on a contingent basis, his logs represent only a minimum amount of the time actually expended on the case. He used the logs to bill the NAMH at the rate of $35 per hour. He kept these billings to a minimum because of the limited funds that the funding plaintiffs had available. Since this matter was brought at least partly on a contingent basis, Mr. Wagshal did not know that he would have to keep careful records of all the time spent on the action. As stated by this court in *RMP*, in the future attorneys who intend to seek a court-awarded fee should keep careful record of the work expended on the case. However, in this case Mr. Wagshal did keep careful record of at least 736.5 hours and cannot be faulted for failure to keep record of additional hours. Under the circumstances the the court finds it proper to increase the number of hours for work on the case in chief from 736.5 hours to 850 hours. For the reasons stated in the *RMP* case, the court continues to feel that Mr. Wagshal's proper hourly rate of compensation for work of this type is $70 per hour. Accordingly, the time factor in the compensation will be $59,500.

Petitioner claims to have spent 753.75 hours on the instant fee application. While petitioner is entitled to compensation for the reasonable time and effort in petitioning the court for a fee, the court finds the claim of over 750 hours greatly excessive. First, the application in this case in many ways is repetitive of those filed in *RMP* and in *National Council of Community Mental Health Centers, Inc. v. Weinberger*. Mr. Wagshal has been compensated for his fee work in both of those cases and the court finds that large further compensation in the instant case would be improper. Second, Mr. Wagshal's fee papers have been of excessive length and detail. In these matters counsel should present his application for a fee and limited other relevant information. For instance, in *Lindy Bros. Builders, Inc. v. American R. & S. San. Corp.*, 382 F.Supp. 999 (E.D.Pa.1974), where a large number of attorneys spent over 6000 hours on the merits of the case, the same attorneys expended only 305 hours in application to the court for a fee. Certainly the issues presented in this case are far different than those in *Lindy* but the court finds it illustrative that huge numbers of hours need not be expended in applying to the court for a fee. The court has no doubt that Mr. Wagshal has indeed expended a huge number of hours on this fee application. However, the court, sitting in equity, deems it inequitable to award compensation for all those hours, most of which the court concludes were expended needlessly. When counsel petitions a court of equity to exercise its discretionary powers, that counsel must convince the court that the circumstances are proper for such action. Under the circumstances of the instant case, the court concludes that the reasonable time expended on this fee application is 125 hours. A reasonable rate of compensation for these activities is $50 per hour. *See Lindy Bros. Builders v. American R. & S. San. Corp., supra,* 487 F.2d at 167. Thus, the compensation for work on the fee application is $6,250.

The court finally must determine what incentive fee or bonus, if any, is appropriate in this case. In this action, Mr. Wagshal has conferred a very substantial benefit upon both the public and the class members. He succeeded in obtaining a judicial decree declaring illegal the huge impoundment of funds by the Executive Branch. For plaintiffs he

394

obtained release over two fiscal years of almost half a billion dollars in grant funds. Many of the grantees never would have been able to run their programs or research projects without these funds. Of course, to a large extent Mr. Wagshal did not, by this efforts, create the amount of benefit—Congress had decreed the amount of monies by appropriation and the judicial decree had the effect of releasing these funds in the amounts set by Congress. Nevertheless, the benefits conferred by this litigation were substantial.

During the case on the merits Mr. Wagshal exhibited substantial legal skill in addressing the complex issues involved. The greatest skill and effort was devoted, in the court's opinion, to procedural issues, particularly the structuring of this Class Action with 33 named plaintiffs representing a wide spectrum of interests in the mental health and alcoholism fields. At the hearing on this fee application certain Class members argued that the substantive issues in this case were not terribly difficult, especially since this case followed that decided by Judge Gesell. While certain of the anti-impoundment principles were developed in other cases, and while this case did not involve the novel post-judgment litigation found in *RMP*, the court believes that many of the issues presented by the merits of this litigation were complex and difficult. Mr. Wagshal devoted himself tirelessly to prosecution of this ac-

tion and served his clients well.[4] The court notes finally that Mr. Wagshal was sought by Class members to represent them in this action at a fee of $35 per hour, with additional compensation due only if the case were won. While Mr. Wagshal was protected against total lack of compensation, he did pursue this action at a fee considerably below his normal billing rate.

Under the circumstances of this case and given the extensive success achieved and benefits conferred by the case on the merits, the court concludes that Mr. Wagshal deserves a substantial bonus for his work on the merits of this case. *See RMP, supra* at 20. The court will award a bonus of 75 percent for the work on the merits; no bonus is appropriate for work on the fee application. This brings the compensation to a total of $110,375. For convenience this sum will be paid by defendants from the fund presently under order of the court. *See National Council of Community Mental Health Centers, Inc. v. Weinberger, supra* at 997. Defendants shall pay $86,030.36 to Mr. Wagshal and $24,344.64 to the National Association for Mental Health which will distribute this money to all parties which contributed funds, with interest at six percent per annum from date of this Memorandum and Order. Defendants shall make payment within 60 days of the date of this Memorandum and Order. If defendants take an appeal, payment shall be stayed until the appeal has been decided.

4. The NAMH, the chief funding plaintiff, submitted the following comment regarding Mr. Wagshal's efforts:

It is very much in the interest of NAMH that Mr. Wagshal's fee application be entertained and that he be awarded a generous fee, consistent with the extent of his work and the difficulty and magnitude of the task he had undertaken. NAMH considers that Mr. Wagshal gave it and the other named plaintiffs extraordinarily diligent representation, often working nearly around the clock, and left no stone unturned in a highly determined and thoroughly ethical pursuit of the success which finally came.