665 F.2d 1060
 214 U.S.App.D.C. 242
 Frank LOVE, Individually, Pearl Love, Individually, Frank A.
Love, a Minor, by His Next Friend, Frank Love,
Angela D. Love, a Minor, by Her Next
Friend, Frank Love, Appellants,
v.
Richard BUDAI, et al.
 No. 79-1551.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 13, 1980.
Decided Dec. 4, 1980.
 
 Appeal from the United States District Court for the District of Columbia (Civil Action No. 78-0083).
 Eugene J. Fitzpatrick, Rockville, Md., for appellants.
 David P. Sutton, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.
 Before McGOWAN and GINSBURG, Circuit Judges, and JOYCE HENS GREEN*, United States District Judge for the District of Columbia.
 PER CURIAM:
 
 
 1
 Asserting the existence of a genuine fact dispute, plaintiffs appeal from a summary judgment accorded defendants in this "Bivens"-styled damage action against members of the D.C. Metropolitan Police Department. We reverse the judgment with respect to defendants Budai, Robertson, and Finkelberg. As to Budai and Robertson, we find in the record, particularly in plaintiff Pearl Love's sworn statements, a pointed issue of fact concerning what those defendants observed prior to requesting a search warrant. Until that matter is aired more thoroughly, no secure judgment may be made on the ultimate question, whether defendants Budai and Robertson entertained a reasonable belief in the validity of their conduct. Regarding the conduct in which defendant Finkelberg is alleged to have engaged, we do not find it apparent that, to a legal certainty, the claims set out in the complaint fail to meet the amount in controversy requirement.
 
 
 2
 The episode that gave rise to this lawsuit occurred on October 19, 1977. At about 11:20 p. m., police officers, armed with a search warrant, forcibly entered the Love home at 5550 B Street, S.E. The ensuing search for narcotics yielded no evidence of contraband on the premises. It did occasion property damage later repaired by the District and, the plaintiffs allege, anguish, humiliation, and physical and mental distress in the Love household.
 
 
 3
 Defendants Budai and Robertson, participants in the search, had procured the warrant two days earlier. The affidavit they prepared sought permission to search "the entire premises of 5550 B Street, S.E.," premises they described as "occupied by a Negro, male, known as John Doe alias Lawrence." Their request was predicated on a reported observation they claimed to have made within 60 hours of October 17, presumably on October 14. The two officers said they had driven an unnamed, reliable source to the street in question and had witnessed a controlled buy of narcotics at the stated address. Budai and Robertson gave this description of their observation:
 
 
 4
 (T)he source left the officers vehicle and was observed by Detectives Robertson and Budai to walk directly to the premises of 5550 B Street S.E., knock on the door and enter. A short time later the source was again observed by the officers, leaving the premises. The source walked directly back to where the Affiant (Detective Budai) and Detective Robertson were waiting.
 
 
 5
 The affidavit further stated that the source reported, upon returning to the officers' vehicle, that "Lawrence opened the door" and supplied, in exchange for money paid over by the source, a plastic bag filled with a white powder. The powder, upon testing, proved to contain a narcotic drug.
 
 
 6
 The record leaves hazy, and counsel was unable to inform us, where defendants Budai and Robertson were positioned when they saw the source entering and leaving the house they identified as 5550 B Street, S.E. The two officers did say they parked on Southern Avenue near the B Street intersection. Defendant Robertson did not recall exactly how far back they were from the intersection. He said he could see the house on B Street, but not the address numbers. After the source returned to the car, the officers drove along B Street to verify the location of the house. This suggests at least the possibility that their initial observation was less than acute, and that they were not certain which of the several "look alike" houses on the block the source entered. Moreover, defendants provided no indication of the reliability of the unnamed source, apart from defendant Budai's statement that, on one occasion in the past, he had used the source successfully.
 
 
 7
 Plaintiff Pearl Love spoke with clarity about her situation the week of October 10, and the day of October 14. She was ill with a virus, which kept her home the full week. On October 14, she never left the house. She knew no "Lawrence" or anyone fitting his description, nor did her husband. No one came to her door October 14 or any other day that week inquiring about narcotics. Further, she, her husband, and their two young children had resided at 5550 B Street approximately six and one-half years. At no time during her family's occupancy, she said, had drugs been dispensed from that address.
 
 
 8
 Pearl Love also said on deposition that a house four doors removed was known for "four or five years" as a place where something was going on, it was "just like a drive-in movie," she testified. That house, 5538 B Street, was searched pursuant to a warrant several months after the search of the Love home, and narcotics were found on the premises. Numbers were missing from the house at 5538 B Street. At the Love home, all address numerals were in place.
 
 
 9
 The uncertainty as to the circumstances surrounding the controlled buy that Budai and Robertson reported they observed, including the precise place from which the observation was made and the apparent inability of the defendants to see the 5550 address, combined with the slim information supporting defendant Budai's identification of the source as reliable, the "look alike" houses filling the block, and Pearl Love's firm statements that she was home all day and no one came to the door, suggest that the inquiry ended too early. Crediting plaintiff Pearl Love's statements, as a court must on defendants' motion for summary judgment, defendants Budai and Robertson could not have observed what they said they witnessed. Based on the record before us, we do not share the confidence of the district court that, at most, "someone made a mistake." Plaintiffs' response to the motion for summary judgment, in short, is adequate to leave open a fact question concerning what defendants Budai and Robertson observed and the determination in large part dependent thereon, whether these defendants acted negligently[1] or with reckless disregard for the truth and thus without a reasonable belief in the validity of their actions.[2]
 
 
 10
 Plaintiffs allege that defendant Finkelberg used excessive and unlawful force in restraining Pearl Love during the search. They assert Finkelberg threw her onto a bed, threatened to handcuff her, and stated, in the presence of the Love children, that they would be placed in a receiving home.[3] Pearl Love claimed that this conduct resulted in severe emotional distress, which caused her to miss work for one week and send her children to her parents in South Carolina while she recovered. She further asserted that she has suffered from recurring headaches since the October 19, 1977, incident.
 
 
 11
 The district court correctly noted that allegations of unlawful assault can state a claim under the Fifth Amendment. Payne v. District of Columbia, 559 F.2d 809 (D.C.Cir.1977). However, the court found the amount in controversy did not exceed $10,000, the jurisdictional threshold under 28 U.S.C. § 1331(a).[4]
 
 
 12
 To dismiss a claim on jurisdictional amount grounds, the court must find to a legal certainty that the plaintiff could not recover in excess of $10,000. St. Paul Indemnity Co. v. Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). The district court cited James v. Lusby, 499 F.2d 488 (D.C.Cir.1974), as authority for the dismissal here. However, in that case the plaintiff admitted to suffering no mental distress, and the court found that plaintiff's own abusive conduct negated any possibility of recovering exemplary damages. Pearl Love alleges loss of only a week's wages, but she asserts emotional distress continuing long after the traumatic incident, and physical discomfort in the form of recurrent headaches that she had not experienced prior to the episode in suit. When the possibility of exemplary damages is added, Bell v. Preferred Life Assurance Society, 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943), we cannot agree that to a legal certainty the assault claim must fail because of an insufficient price tag.[5]
 
 
 13
 Accordingly, the summary judgment entered in favor of defendants Budai, Robertson, Finkelberg, and the District of Columbia[6] is reversed. With respect to the remaining defendants, the judgment is affirmed.
 
 
 14
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a)
 
 
 [1]
 If it is found as a matter of fact that Detectives Budai and Robertson conducted their pre-warrant investigation reasonably, judgment must be entered in their favor. Zweibon v. Mitchell, 516 F.2d 594, 671 (D.C.Cir.1975). If they acted in reckless disregard of plaintiffs' constitutional rights, however, judgment against them would be required. Whether negligence short of recklessness would be sufficient to establish their liability remains an open question in this Circuit. Compare Carter v. Carlson, 447 F.2d 358, 365 n.20 (D.C.Cir.1971), rev'd on other grounds sub nom. District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) (negligence leading to a constitutional deprivation is sufficient to establish a claim for damages), with Madison v. Manter, 441 F.2d 537 (1st Cir. 1971) (negligence insufficient). We do not address the question at this time
 
 
 [2]
 In United States v. Barker, 546 F.2d 940, 945 n.6, 948 (D.C.Cir.1976), this court said that where a government agent honestly believes that a valid warrant has been obtained, the agent's reliance on the magistrate's approval of the search "can be considered virtually per se reasonable." Since plaintiffs do not contend that officer Boyd had any reason to suspect the representations made to secure the warrant, summary judgment was appropriately granted in his favor. However, Barker does not suggest that an officer who obtains a warrant based on representations he has reason to suspect is immunized from liability. Thus the warrant in this case is not dispositive with respect to officers Budai and Robertson
 
 
 [3]
 Detective Finkelberg testified on deposition that Pearl Love had to be restrained because she was interfering with the search. He denied threatening to place the Love children in a receiving home
 
 
 [4]
 Plaintiffs' allegation of a constitutional violation would have supported a claim against Finkelberg under 28 U.S.C. § 1343, which requires no jurisdictional amount, had the conduct in question occurred after December 29, 1979. See Pub.L.No.96-170, 93 Stat. 1284 (1979), amending 28 U.S.C. § 1343 to define the District of Columbia as a "State" for purposes of this nonpocketbook jurisdiction statute
 
 
 [5]
 See Payne v. District of Columbia, supra, 559 F.2d at 820-23 (Robinson, J.); id. at 825-29 (Tamm, J.); Hartigh v. Latin, 485 F.2d 1068, 1072 (D.C.Cir.1973)
 Although plaintiffs' counsel exhibited some confusion on this point at oral argument, and apparently conceded it, the complaint plainly alleges the jurisdictional amount. We are not compelled to hold plaintiffs to a slip made by counsel in the heat of a ten-minute argument. Cf. H. B. Zachry & Co. v. United States, 344 F.2d 352 (Ct.Cl.1965); Albee Homes, Inc. v. Lutman, 274 F.Supp. 875 (E.D.Pa.1967) (setting aside stipulations found contrary to evidence).
 
 
 [6]
 The district court properly dismissed claims against the District of Columbia under a theory of negligent training and supervision of its officers; plaintiffs do not vigorously contest this ruling on appeal. We remand to the district court consideration of the District's liability vel non for the conduct of defendants Budai, Robertson, and Finkelberg on a theory of respondeat superior. Because this important issue was not adequately briefed on appeal, we do not believe that now is the "time to tell" whether this court's previous decision imposing vicarious liability on the District, Dellums v. Powell, 566 F.2d 216 (D.C.Cir.1977), cert. denied, 438 U.S. 916, 98 S.Ct. 3147, 57 L.Ed.2d 1161, rehearing denied, 439 U.S. 886, 99 S.Ct. 234, 58 L.Ed.2d 201 (1978), has been overruled sub silentio by Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Cf. Thomas v. District of Columbia, 82 F.R.D. 93, 94 (D.D.C.1979)