717 F.2d 1451
 230 U.S.App.D.C. 394
 NATIONAL ASSOCIATION FOR MENTAL HEALTH, INC., et al., Jerome
S. Wagshal, Appellants,
v.
The Honorable Joseph A. CALIFANO, individually and as
Secretary of Health, Education and Welfare, et al.
Jerome S. WAGSHAL, Appellant,
v.
CROZER-CHESTER MEDICAL CENTER, et al.
NATIONAL ASSOCIATION FOR MENTAL HEALTH, INC., et al., Appellants,
v.
Honorable Joseph A. CALIFANO, et al.
Jerome S. WAGSHAL, Appellant,
v.
CROZER-CHESTER MEDICAL CENTER, et al.
 Nos. 82-1196, 82-1197, 82-1278 and 82-1509.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 18, 1983.
Decided Sept. 27, 1983.
 
 Appeals from the United States District Court for the District of Columbia (D.C. Civil Action Nos. 73-01812 & 77-00215).
 Jerome S. Wagshal, Washington, D.C., for appellants.
 John B. MaGee, Washington, D.C., of the Bar of the Supreme Court of the State of Washington, pro hac vice, by special leave of the Court, for appellees.
 Robert L. Moore, II, Beverly Hills, Cal., was on the brief for appellee, the University of Southern California in No. 82-1197.
 Hope S. Foster and Mary Susan Philp, Washington, D.C., were on the brief for appellee, Crozer-Chester Medical Center in No. 82-1197 and No. 82-1509.
 Leonard Schaitman and John S. Koppel, Attys., Dept. of Justice, Washington, D.C., were on the brief for appellee, Secretary of Health and Human Services in Nos. 82-1196 and No. 82-1278.
 Stephen S. Ostrach, Boston, Mass., entered an appearance for appellee, Commonwealth of Massachusetts in No. 82-1196 and No. 82-1197.
 Before WILKEY and BORK,* Circuit Judges, and McGOWAN, Senior Circuit Judge.
 Opinion for the Court filed by Senior Circuit Judge McGOWAN.
 McGOWAN, Senior Circuit Judge:
 
 
 1
 For nearly nine years, Jerome S. Wagshal has tirelessly, but unsuccessfully, sought attorney's fees from the alleged beneficiaries of his efforts in securing the release of unlawfully impounded federal grant funds. In this appeal, Wagshal seeks reversal of various District Court determinations which, taken together, may finally foreclose Wagshal from litigating further his attorney's fees claims. For the reasons set forth below, we affirm the District Court's decision.
 
 
 2
 * In early 1973 President Nixon ordered the impoundment of federal funds that Congress had appropriated for mental health and alcoholism research and training grants, alcoholism project grants, and alcoholism state formula grants.[1] In September 1973, the National Association for Mental Health, Inc. (NAMH) brought a class action against the Secretary of Health, Education and Welfare (the Secretary) and others to obtain the release of the grant funds impounded in the 1973 and 1974 fiscal years. NAMH, the principal funding plaintiff, brought the action on behalf of thirty-three named plaintiffs and several hundred unnamed class members. The class members included the individuals, institutions, and states that were likely to benefit from the grants which were threatened by the impoundment action. NAMH engaged Wagshal to represent the plaintiff class for an hourly fee of $35. In addition, Wagshal and NAMH agreed that Wagshal would petition the District Court for a fee from the benefiting class members if he was successful in gaining the release of the impounded funds. The named plaintiffs had notice of the fee agreement, but the unnamed class members could not be determined at the outset of the litigation and, therefore, they had no formal notice of the action or the fee agreement. The District Court did not learn of the fee agreement until later.[2]
 
 
 3
 On February 7, 1974, the District Court held the impoundment illegal and ordered the Secretary to obligate the grant funds in accordance with the applicable statutes. NAMH v. Weinberger, No. 1812-73 (D.D.C. Feb. 7, 1974) (Findings of Fact and Conclusions of Law) (NAMH I ). The District Court order released 1973 and 1974 fiscal year grant funds totalling $444,565,000. Wagshal filed an application for attorney's fees on September 4, 1974. In his fee application Wagshal notified the District Court for the first time of his attorney's fee agreement with NAMH. In accordance with the agreement, he asked the District Court to award him a reasonable attorney's fee for his work in the impoundment case. Wagshal requested that the court either order the defendants to pay the fee out of the unexpended NAMH I grant funds or, in the alternative, that it order the benefiting class members to pay Wagshal directly.
 
 
 4
 Relying on its decision in National Council of Community Mental Health Centers, Inc. v. Weinberger, 387 F.Supp. 991 (D.D.C.1974), rev'd sub nom. National Council of Community Mental Health Centers, Inc. v. Mathews, 546 F.2d 1003 (D.C.Cir.1976), cert. denied, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977) (NCCMHC ), the District Court held that Wagshal should be paid a fee from the unexpended grant funds under the Secretary's control. National Association for Mental Health, Inc. v. Weinberger, 68 F.R.D. 387, 390-91, 394 (D.D.C.1975), rev'd mem. sub nom. National Association for Mental Health, Inc. v. Califano, 561 F.2d 1021 (D.C.Cir.1977) (NAMH II ). The District Court refused to exercise in personam jurisdiction over the individual members of the plaintiff class so as to order them to pay an attorney's fee directly to Wagshal. NAMH II, supra, 68 F.R.D. at 392. Distinguishing its decision in National Association of Regional Medical Programs, Inc. v. Weinberger, 396 F.Supp. 842 (D.D.C.1975), rev'd sub nom. National Association of Regional Medical Programs, Inc. v. Mathews, 551 F.2d 340 (D.C.Cir.1976), cert. denied, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977) (NARMP ), the District Court said that although "it might be within the bounds of due process for the court to order the ... grantees to pay a fee directly to Mr. Wagshal," it would, in the exercise of its discretion, refuse to do so in Wagshal's case. NAMH II, supra, 68 F.R.D. at 392. In a footnote the court stated that it did not intend "to indicate any view on the merits of whether proper in personam jurisdiction ha[d] been obtained within the context of this fee proceeding," but noted that under "almost identical circumstances" it had held in NCCMHC, supra, that it had no in personam jurisdiction. NAMH II, supra, 68 F.R.D. at 392 n. 3.
 
 
 5
 This court reversed the District Court without an accompanying opinion. See NAMH II, supra, 561 F.2d at 1021. In support of its per curiam judgment of reversal, this court noted its decisions in NARMP, supra, and NCCMHC, supra. In both NARMP, supra, 551 F.2d at 343-44, and NCCMHC, supra, 546 F.2d at 1007, this court held that unexpended grant funds were in the safekeeping of the public treasury, and that any payment of attorney's fees from those funds would be an award against the United States contrary to 28 U.S.C. Sec. 2412 (1970) (current version at 28 U.S.C. Sec. 2412(a) (Supp. V 1981)).[3] Thus, as in those cases, the District Court in NAMH II had no equitable jurisdiction to award attorney's fees in this case where the payment would come from the United States Government. See NARMP, supra, 551 F.2d at 344.
 
 II
 
 6
 We now turn to Wagshal's most recent efforts to obtain a fee for his services in this impoundment case. On February 4, 1977, Wagshal sued Crozer-Chester Medical Center (Crozer), the National Council on Alcoholism Delaware Valley Area, Inc.[4] , the University of Southern California (U.S.C.), and the Commonwealth of Massachusetts[5], individually and as named defendants representing a class of defendants described as "all persons and entities, other than citizens of the District of Columbia, who received funds released as a result of the successful litigation conducted by [Wagshal] in the NAMH action." Wagshal v. Crozer Chester Medical Center, No. 77-0215, at 3 (D.D.C. Feb. 4, 1977) (complaint). Wagshal sought a judgment that he was entitled "to the reasonable value of legal services rendered the defendants by him." Id. at 6. In addition to the direct action, Wagshal also filed a new application for attorney's fees in the original impoundment case. National Association for Mental Health, Inc. v. Califano, No. 1812-73 (D.D.C. July 14, 1978) (Renewal of Petition for Award of a Reasonable Attorney's Fee). The District Court consolidated the two cases on March 12, 1979.
 
 
 7
 In March 1980, Wagshal presented a proposed settlement plan to the District Court for its approval. U.S.C. had agreed to the plan, which provided for notice to the non-state beneficiaries of the NAMH I action, and an opportunity either to pay a prorated share of Wagshal's legal fee or to object to making such payment.
 
 
 8
 The District Court subsequently issued the four rulings to which Wagshal raises objections in this appeal. First, resolving the issue it had earlier left undecided, see NAMH, supra, 68 F.R.D. at 392 & n. 3, the District Court refused to approve the proposed settlement plan because
 
 
 9
 these documents at the very least suggest that the court is exercising in personam jurisdiction over the class members, adjudicating their rights by compelling them to pay a stated sum unless they pursue the alternative course of objecting to that payment. The court does not have the jurisdiction required for such adjudication of rights.
 
 
 10
 ....
 
 
 11
 The court need cite no more authority for this proposition than that the listed class members have never appeared before it or in any way taken affirmative action within the scope of this court's authority. No counsel has appeared on their behalf. It would be manifestly unjust to hold that they may be required to take any action with respect to Mr. Wagshal's demand for fees solely because one member of the class, the University of Southern California, has acknowledged its debt to him and agreed to the proposed settlement.
 
 Record Document (R.D.) No. B-41, at 2-3.[6]
 
 12
 Second, the District Court relied on its lack of personal jurisdiction when it later dismissed Wagshal's renewed petition for attorney's fees. The court said:
 
 
 13
 Mr. Wagshal asserts that a class has already been certified in Civil Action No. 1812-73. That class, however, was certified for the purpose of litigating the merits of the impoundment case. Mr. Wagshal, by filing a Petition for Attorney's Fees in Civil Action No. 1812-73, cannot secure in personam jurisdiction over the members of the class in order to secure a judgment against them for attorney's fees.
 
 
 14
 R.D. No. B-51, at 2.
 
 
 15
 Third, the District Court denied Wagshal's motion to certify a defendant class because it found that "Crozer-Chester and the University of Southern California will not fairly and adequately protect the interests of the class," and that "this court in any event does not have in personam jurisdiction over the class members." R.D. No. B-68, at 2.
 
 
 16
 After the District Court refused to certify the defendant class, only Crozer and Southern California remained as defendants in Wagshal's lawsuit. The District Court found that it lacked subject matter jurisdiction and dismissed the remainder of the case because "the amount in controversy insofar as the remaining defendants University of Southern California and Crozer-Chester Medical Center are concerned, does not exceed $10,000." R.D. No. B-70.[7]
 
 III
 
 17
 * The District Court's orders rejecting the proposed settlement and dismissing Wagshal's renewed petition for attorney's fees were clearly correct. In the numerous opinions that have concerned the impoundment cases which Mr. Wagshal successfully brought nearly a decade ago, this court and the District Court have repeatedly rejected the notion that beneficiaries of the release of funds who were not parties to pre-litigation fee agreements could ever be forced to share in the costs of prosecuting those actions. We wrote in NCCMHC, supra, of parties similarly situated to those of the proposed class here that "[t]hese benefitting class members were not parties to the retainer agreement and the district court was not aware at the time of certification that attorney's fees would be sought from them. Wagshal made no reference to his fee arrangement in any of his original pleadings." NCCMHC, supra, 546 F.2d at 1006. Because of this, the court continued, "[t]he class members were only informally advised of the retainer provisions by the NCCMHC. No evidence that they agreed to or understood the implications of the agreement was submitted to the district court. None of the class members was ever given an opportunity to opt out of the litigation and none appeared by separate attorney in this fee application case." Id. All these considerations supported this court's agreement with the District Court that it "did not have the power to assess the fee against individual class members." Id. at 1005.
 
 
 18
 Similarly, in NARMP, supra, the conclusion was that the District Court "may not charge the individual class members with payment of the fee because it does not have jurisdiction over them due to their lack of adequate representation in the fee proceeding." NARMP, supra, 551 F.2d at 346.
 
 
 19
 The District Court, writing in the last of the original trio of impoundment-connected fee cases, NAHM I, supra, declined again to order beneficiaries to assume responsibility for Mr. Wagshal's fees. It cited with approval the conclusion of one commentator that "[t]o make [such beneficiaries] personally liable to pay lawyer's fees because rights had been conferred on them through the binding effect of a class action decree would enable the successful lawyers not merely to solicit but to conscript clients." Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L.Rev. 849, 919 (1975) (cited with approval in NAHM II, supra, 68 F.R.D. at 392). The District Court noted that it found this reasoning persuasive, but left open the door through which the present suit eventually passed by adding that "[w]hile it might be within the bounds of due process for the court to order Class 2 and Class 3 grantees to pay a fee directly to Mr. Wagshal, the court declines to do so." Id. at 392. In the orders currently under review the District Court has made explicit that these beneficiaries cannot be ordered to make any payments to Mr. Wagshal as the court "does not have the jurisdiction required for such adjudication of rights." R.D. No. B-41, at 2. We agree.
 
 
 20
 Three times Mr. Wagshal has been told that the government cannot be made to pay his fees. In the course of those decisions he has also been told rather clearly that the courts would not enforce his fee claims on members of the beneficiary classes in those earlier proceedings whose connection to the litigation was at best remote and frequently unknowing. Now Mr. Wagshal has begun a second generation of actions for payment, actions which while more direct in their demands are no more defensible in their legal theory than were the earlier attempts. The District Court's rejection of the proposed settlement agreement and its dismissal of the renewed petition for fees were correct since approval of either would have ignored all of the above precedent designed at least in part to protect absent class members.
 
 
 21
 The conclusions of this court's earlier reviews of Mr. Wagshal's efforts to obtain payment from the beneficiaries were reinforced in National Association of Farmworker Organizations v. Marshall, 628 F.2d 23 (D.C.Cir.1979). In that decision this Court summarized its earlier results by stating that "this court in Community and Medical Programs directed counsel to make pre-litigation arrangements for payment of fees, curbing any possibility that grant recipients should not be subjected to in personam jurisdiction or forced to defend their interests by retention of counsel." Id. at 27 (emphasis added). The equities that accompany the insistence on clear structuring of fee arrangements in class action suits are obvious. To hold otherwise would be to demand of members of a class of years-ago ended litigation that they now appear and defend against charges that they owe substantial sums of money to a lawyer they had never known, much less hired. The simple cost of retaining counsel, as Southern California's lawyer has repeatedly pointed out, makes defense against such charges prohibitively costly. To ensure that Mr. Wagshal does not later return to our court with yet another alleged beneficiary of his earlier suits in tow, we emphasize the simple truth that the beneficiaries of NAMH I who were not named and consenting parties to a pre-litigation retainer agreement are not now subject to the in personam jurisdiction of the District Court.
 
 B
 
 22
 Next we must consider orders of the District Court that went to maintenance of the entire action before it.
 
 
 23
 In both proceedings below, Wagshal sought attorney's fees from the NAMH I decision beneficiaries as a class. Defendant class actions are clearly authorized by Rule 23 of the Federal Rules of Civil Procedure. That rule states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all ..." Fed.R.Civ.P. 23(a) (emphasis added). The rule also sets out four prerequisites to a class action:
 
 
 24
 (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 25
 Id. While all of these prerequisites must be met, this appeal focuses solely on the fourth prerequisite.[8]
 
 
 26
 In NARMP, supra, this court said: "Basic consideration of fairness require[s] that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment." NARMP, supra, 551 F.2d at 344-45. At all stages of the litigation the lack of adequate representation "denies [absentee class members] due process of law and prevents the court from assuming personal jurisdiction over the absentee members." Id. at 346. See NCCMHC, supra, 387 F.Supp. at 993-94 & 546 F.2d at 1008. Thus the central issue in this case is whether Crozer and U.S.C. would adequately represent the defendant class of federal grant beneficiaries. We believe that the named defendants would not have adequately represented the class defendants at the stages of litigation under review here. Therefore, we affirm the District Court's refusal to certify the defendant class.
 
 
 27
 In determining whether a named representative in a class action is "a fair and adequate representative" within the meaning of rule 23(a)(4) we have considered two principal requirements: "1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representatives must appear able to vigorously prosecute the interests of class through qualified counsel." NARMP, supra, 551 F.2d at 345. We need not apply the first requirement in this case because it is clear that Crozer and U.S.C. would not vigorously defend the interests of the unnamed class members.
 
 
 28
 We agree with the District Court that the defense of this class action should not rest with Crozer and U.S.C. They are unwilling to represent the defendant class because they have an insufficient financial stake in the outcome. Although the parties are not in agreement as to the exact attorney's fee that Wagshal is claiming from Crozer and U.S.C., the record indicates that their exposure is insufficient to motivate adequate representation of the defendant class. In a hearing before the District Court, Southern California said that its maximum exposure was under $1000, and Crozer stated that its exposure was $250.00. See Wagshal v. Crozer-Chester Medical Center, No. 77-0215, at 13 (D.D.C. Nov. 6, 1981) (transcript of status call) ("R.D. No. B-74"). When asked if the proffered amounts were accurate, Wagshal responded: "I don't recall, Your Honor, but those figures do not sound unreasonable." Id. at 13-14. In an affidavit submitted to the District Court, a representative of U.S.C. again stated that the school's liability, as represented by Wagshal, was "not more than $1,000." R.D. No. B-63 (attachment) (affidavit of Carl M. Franklin). Crozer's President submitted a similar affidavit in which he stated that "Wagshal has represented to the Crozer-Chester Medical Center that it is liable for its pro rata share of any fee payable to him, and that said share will not exceed $250.00." R.D. No. B-67 (attachment) (affidavit of James H. Loucks, M.D.).
 
 
 29
 U.S.C. stated before the District Court that it was "unwilling to expend the effort and funds necessary to defend itself in this action, let alone represent the interests of a large group." R.D. No. B-63, at 4. The school's position was supported by the affidavit of one of its administrators, who stated: "Due to the minimal amount of its alleged liability in this action, the University of Southern California does not intend to defend this action on behalf of itself or any others." R.D. No. B-63 (attachment) (affidavit of Carl M. Franklin). Crozer chose action over words in demonstrating its unwillingness to represent the class. It defaulted its defense by failing to respond to Wagshal's complaint in No. 77-215. Crozer later filed a motion in opposition to Wagshal's motion for class certification supported by the affidavit of its President, who stated: "Due to the minimal amount of its alleged liability in this action, the Crozer-Chester Medical Center does not intend to defend this action on behalf of itself or any others." R.D. No. B-67 (attachment) (affidavit of James H. Loucks, M.D.). Both Crozer and Southern California maintain on appeal that they do not intend to defend this action due to their minimal financial exposure. See Brief for Crozer at 5; Brief for Southern California at 7. We believe that the named representatives' unwillingness to serve, when grounded on a clearly minimal financial stake in the outcome of the defendant class action, is a sufficient basis on which to deny certification of the defendant class due to the failure to meet rule 23(a)(4)'s requirement that the named party fairly and adequately represent the interests of the unnamed parties.
 
 
 30
 We agree with a recent statement by the Fifth Circuit that "[t]he adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees...." Horton v. Goose Creek Independent School District, 677 F.2d 471, 488 (5th Cir.1982) (citation omitted). The District Court conducted such an inquiry and found with excellent reason that these class representatives would not pass the adequacy test. "The decision to grant or deny certification is ... initially committed to the sound discretion of the district judge, and the decision will not be overturned except for abuse of discretion." Id., at 487. The District Court was well within its discretion in denying certification in this instance.
 
 C
 
 31
 As a result of the District Court's determination that it lacked personal jurisdiction over the unnamed class members in the fee application proceedings and its later refusal to certify a defendant class, Crozer and Southern California were the only defendants remaining in the proceedings before the District Court. The District Court subject matter jurisdiction was premised on the diversity of citizenship between Wagshal and the remaining defendants. See 28 U.S.C. Sec. 1332 (1976). Such jurisdiction also requires that "the matter in controversy exceeds the sum or value of $10,000." Id. The District Court, following its hearing on November 6, 1981, and the submission of memoranda by all remaining parties, concluded that "based on the complete record in this diversity case and in the related case of National Association of Regional Medical Programs, Inc. v. Weinberger, 396 F.Supp. 842 (1975), reversed 551 F.2d 340 (D.C.Cir.1976) ..." the amounts in controversy did not exceed $10,000. R.D. No. B-70. It accordingly dismissed the case for lack of jurisdiction.
 
 
 32
 "To dismiss a claim on jurisdictional amount grounds, the court must find to a legal certainty that plaintiff could not recover in excess of $10,000." Love v. Budai, 665 F.2d 1060, 1063 (D.C.Cir.1980). Admissions made to the Court by Mr. Wagshal in the course of the hearing on November 6, 1981 and confirmed by defendants' counsel leave no doubt as to the correctness of the District Court's decision on this matter. R.D. No. B-74, at 13-14. Mr. Wagshal has since attempted to argue that the figures bandied about at the hearing--figures which never reached above an aggregate estimate of $1,250--were no more than old settlement offers. The context of those discussions clearly refutes this position. The Court directly inquired of Mr. Wagshal whether defendants' estimates of their maximum exposure were correct. Mr. Wagshal responded, "I don't recall, Your Honor, but those figures do not sound unreasonable." Id. This exchange, coupled with the District Court's long experience with this and related cases, provides the necessary certainty as to the amount in controversy. The standard of "legal certainty" is a high one, but we are satisfied that the record as a whole supports the District Court's conclusion here.
 
 
 33
 Mr. Wagshal also raises numerous objections to the manner in which the District Court disposed of this action. He argues that the Court's sua sponte decision to dismiss violated his due process rights. See Brief for Wagshal at 36-37. We have considered these assertions and find them to be without merit.
 
 
 34
 The Supreme Court, in reviewing a sua sponte dismissal for lack of prosecution, commented that "the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing [does not] necessarily render such a dismissal void." Link v. Wabash Railroad Co., 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734, reh'g denied, 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962). The power of the District Court to maintain a steady surveillance of its own docket is undisputed. See Burden v. Yates, 644 F.2d 503 (5th Cir.1981). The responsibility to assess cases for their jurisdictional adequacy is part of that power. "Because subject matter jurisdiction determines whether a court has power to act in a given case, a federal court ... must raise the issue on its own motion where the parties fail to bring it to the court's attention." Rice v. Rice Foundation, 610 F.2d 471, 474 (7th Cir.1979). Mr. Wagshal has been given many opportunities over the years to explain his position. The hearing on November 6, 1981 was only the most recent of many attempts he mounted to convince the District Court of the merits of his action. When following that hearing it became clear to the lower court that it lacked jurisdiction over the remaining defendants it was well within its discretion to act with dispatch to end the litigation. Had the court ordered yet another round of hearings and briefs it would have succeeded only in enlarging the already considerable expenditure of resources generated by this litigation.
 
 
 35
 Finally, Mr. Wagshal argues that the District Court's dismissal resulted in a forfeiture of an already entered default against Crozer. See Brief for Wagshal at 38-39. Once it became aware of its lack of jurisdiction in the matter, the District Court was correct in ignoring the default. That action was taken under the false impression of an adequate jurisdictional basis for the suit. When that basis was revealed as non-existent, the default itself was void as an action taken in excess of the District Court's power over those parties.
 
 IV
 
 36
 Mr. Wagshal's long quest for fees from the previously unnamed but alleged beneficiaries of his efforts appears to have now come to an unsuccessful end. Throughout his papers and arguments there runs the theme that the courts must have some way of getting to him his just due. With this we cannot agree. As we have many times pointed out to him, it is within the attorney's power, at the start of a case, to settle the terms under which the litigation will be pursued. The courts are not empowered to enforce that which was never agreed to among the parties. Mr. Wagshal failed at the beginning of his efforts to attend to arrangements regarding his fees. We cannot alter that fact. The judgment of the District Court is accordingly affirmed.
 
 
 37
 It is so ordered.
 
 
 
 *
 Judge Bork heard the oral argument, but did not participate in the disposition of these cases
 
 
 [1]
 The complaint alleged that the impoundment action unlawfully limited funding of grant programs governed by the Public Health Service Act, 42 U.S.C. Secs. 241, 242a, the Community Mental Health Centers Act, 42 U.S.C. 2688j-2 (repealed in 1974) & 2688o (superseded in 1975), and the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act of 1970, 42 U.S.C. Secs. 4551, 4571, 4572 (Sec. 4572 repealed in 1981)
 
 
 [2]
 Mr. Wagshal's retainer agreement with NAMH resulted in payment of $27,580.10 to Wagshal. See Reply Brief for Wagshal at 4. Wagshal's retainers in two related suits brought him $34,286, and the settlement of one of those cases, National Association of Regional Medical Programs, Inc. v. Weinberger, 396 F.Supp. 842 (D.D.C.1975), rev'd sub nom. National Association of Regional Medical Programs, Inc. v. Mathews, 551 F.2d 340 (D.C.Cir.1976), cert. denied, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977), yielded another $84,430 to him. See Brief for the Secretary of Health and Human Services at 5
 
 
 [3]
 Section 2412(a) provides:
 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.
 28 U.S.C. Sec. 2412(a) (Supp. V 1981) (emphasis added).
 
 
 [4]
 The complaint named the National Council on Alcoholism Delaware Valley Area, Inc. (Delaware Valley) as a defendant; however, mailed service of process was returned undelivered and Wagshal made no further attempt to join Delaware Valley as a named defendant. See Wagshal v. Crozer Chester Medical Center, No. 77-0215, at 3 (D.D.C. Nov. 6, 1981) (transcript of status call). The District Court dismissed Wagshal's claims against Delaware Valley on November 12, 1981
 
 
 [5]
 The District Court granted Massachusetts' motion to dismiss, and this court affirmed that ruling on appeal. See Wagshal v. Crozer Chester Medical Center, No. 77-215 (D.D.C. August 25, 1981) (order entering judgment on Massachusetts' motion to dismiss), aff'd mem., 696 F.2d 133 (D.C.Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983)
 
 
 [6]
 In this opinion, documents in the District Court record in No. 1812-73 are indicated by the letter "A" before the document number, those in the District Court record in No. 77-0215 are indicated by the letter "B"
 
 
 [7]
 Wagshal also appeals the District Court's orders denying reconsideration of certain motions. See R.D. Nos. B-55 & B-73. Although we do not address them individually, we have accorded them full consideration in reaching our decision
 
 
 [8]
 The University of Southern California argues that the second and third prerequisites, Fed.R.Civ.P. 23(a)(2) & (3), have not been fulfilled, but in view of our determination of the adequacy of representation issue, we need not address those arguments